## JOSEPH DE COSTA *vs.* HARGRAVES MILLS.

Bristol.    October 25, 1897. — February 28, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, & BARKER, JJ.

*Personal Injuries — Master and Servant — Dangerous Machine — Failure to instruct Employee — Negligence.*

In this case, which was an action for personal injuries occasioned to the plaintiff by having his hand caught in a machine on which he was at work in the defendant's mill, there was evidence of negligence on the part of the defendant in not giving to the plaintiff proper instruction of the dangers incident to the work which he was engaged to do.

TORT, for personal injuries occasioned to the plaintiff, while employed in the defendant's mill in Fall River, by having his hand caught in a finishing machine upon which he was at work, through the alleged negligence of the defendant. The declaration was at common law. At the trial in the Superior Court, before *Maynard*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions. The facts appear in the opinion.

*J. F. Jackson*, (*R. P. Borden* with him,) for the defendant.

*L. E. White*, for the plaintiff.

FIELD, C. J. The plaintiff was hurt by putting his arm through the opening between the chamber and the beater box to take out clogs of cotton, whereby his fingers came in contact with the knives on the beater shaft. The description of this part of the machine in the exceptions is as follows: "Directly after these rolls comes a cylindrical box, in which revolves the beater in such a manner that the beater blades or knives strike the lap of cotton as it comes through the feed rolls, and beat it into small tufts or bunches of cotton, which are immediately seized by a current or draft of air caused by a rapidly revolving fan which draws the cotton on through the machine, the heavier particles of dirt falling down through a grating into a box beneath. The beater consists of a shaft whose ends project on either side of the beater box, and are visible from the outside. On the shaft, supported by two arms perpendicular to the shaft,

are two blades or knives parallel with the shaft which strike the cotton, the whole thing resembling the beater in an ice cream freezer placed horizontally. It revolves at about 1,400 revolutions per minute. Over the beater is a cast iron cover, which can be raised at will by the operator, so that the whole interior of the beater box is exposed to view. Next after the beater box is another chamber, which connects the beater box with the cages or screens on which the cotton is accumulated into a mass. The bottom of this chamber is a grating which inclines upward from the beater box to the cages. The distance across this grating from the opening into the beater box to the cages is about two feet. At the end next to the beater the grating is fourteen inches below its cover, so that a man reaching into this chamber would have to put his hand down about fourteen inches in order to strike the grating. It is less deep at its other end, being inclined upward. There is near the beater a plate which extends downward from the top of this chamber about seven inches, which leaves the opening between the beater box and the chamber about seven inches high, and in length equalling the width of the machine, which is about forty inches. The chamber has a cover which lifts on hinges and in which are two glass doors. It was this cover which the plaintiff raised when he was injured."

The exceptions, among other things, also recite as follows: "John P. Bodge, superintendent of the defendant's mill, after describing the machine, testified that a man accustomed to these beaters could reach across the chamber into which the plaintiff put his hand the whole length of his arm, and still not be within an inch or two of the blades of the beater, while a man unaccustomed to such machinery attempting to follow him might get caught; and that upon opening the curtain and looking in carefully you can only see cotton."

The plaintiff testified, through an interpreter, that he was twenty-three years old; was born in St. Michael's, one of the Western Islands, worked on the land there, and never went to school; that he came to this country in March, 1891; that his first work in this country was "distributing cops in the Seaconnet Mill" for three months; that he next worked several months at a summer hotel washing dishes; that he worked at sweeping

in the Wampanoag Mills about five months, and afterward for about ten months "distributing cops"; that later he worked there on pickers one year, throwing armfuls of cotton in, and then worked at a summer hotel; that he applied for a job at the defendant mills, and was ultimately engaged and put to work upon five finishing pickers; and that he had worked about three weeks before he was hurt. He testified that he told the picker boss that he had never worked on such machines, and that the boss said he would teach him; that the boss did not open the machinery, and that he did not know and was not told what separated the cotton inside the machines. The picker boss testified among other things, as follows: "He came and asked me for a job; I asked him if he could run those machines; he said he could. I asked him where he worked before; he said in Crescent Park somewhere in Providence, and that he worked in the Wampanoag Mill in the picker room. I told him that I did not have a job at the present time, but I would send for him if I wanted him. I sent for him in a few days afterward." He testified that he then asked him if he thought he could run the five machines, and he said he thought he could; that "he took hold and started the machine up, and put the laps on and took them off just as good as a man who had been there a year." On cross-examination the witness testified as follows: "He said he worked at Crescent Park or some place, and again at the Wampanoag Mill in the picker room. *Q.* When he said picker room, did he use any gesture that he took cotton through there? *A.* No, sir; he said, 'Me work picker room Wampanoag.' — *Q.* Did you ask him what he did there? *A.* No, sir; I did not ask him what he did. — *Q.* Did you ask him anything further? *A.* No, sir; not that I know of."

We think that it might be inferred from the whole testimony that it required the skill of an experienced workman safely to take out clogs when the beater was in motion, and that the proper way was to stop the machine. The picker boss was accustomed to remove the clogs without stopping the beater, and he did this in the presence of the plaintiff. The plaintiff testified that the picker boss told him that when the machine became clogged he must put his hand in and pull the clog out, and that he did not tell him not to do it when the beater was in motion. Although

the plaintiff had previously worked on similar machines in another mill, he testified that he had cleaned those machines at the noon hour when the machines were stopped. He also testified that he knew nothing of the internal construction of these machines, and there was testimony that the beaters could not be seen when they were running because of the cotton.

The court below saw the plaintiff on the stand as a witness, and could judge better than we can of his apparent intelligence. According to his testimony, he knew little or nothing of the internal construction of machines for picking cotton, although he knew how to start and stop them. We cannot say that it conclusively appears from the testimony that the plaintiff represented himself as an experienced workman, or was an experienced workman on machines for picking cotton, so that he needed no instructions upon the somewhat hidden dangers of the attempt to remove clogs of cotton while the beater was in motion. There was evidence that the picker boss had removed the clogs without stopping the beaters in the presence of the plaintiff, and had thus set an example which it might be dangerous for the plaintiff to follow.

We are of opinion that there was evidence for the jury of negligence on the part of the defendant in not giving to the plaintiff, through its servants, proper instructions as to the dangers incident to the work which he was engaged to do.

*Exceptions overruled.*