FRANCIS CHMIEL *vs.* THORNDIKE COMPANY.

Hampden.     September 23, 1902. — October 29, 1902.

Present: HOLMES, C. J., MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence,* Employer's liability, duty to warn.

A new hand in a cotton mill, who tries to free the feed rolls of a picker machine which are clogged with cotton by putting his arm into the beater box where the beater knives are making fifteen hundred revolutions a minute and are not more than a quarter of an inch away from the feed rolls, cannot recover from his employer for having his arm cut off by the knives, and he is not excused for incurring this obvious danger by having seen a workman appointed to instruct him in the use of the machine thrust in his arm in a similar way when

the machine was stopped and by the fact that the instructing workman did not tell him that the machine ought to be stopped when this was done. *De Costa* v. *Hargraves Mills*, 170 Mass. 375, distinguished.

It is not the duty of an employer to warn even a stupid foreigner who is dull and slow in learning to use a machine that he must not put his arm where it will come in contact with knives making fifteen hundred revolutions a minute.

In an action by a new hand in a cotton mill for injuries from a dangerous machine, where the plaintiff contends that it was the duty of the defendant to warn him of a danger obvious to an intelligent person because he was not of average intelligence, this court is not precluded from holding, that the presiding judge should have instructed the jury that the risk was an obvious one assumed by the plaintiff, by the fact that the court cannot know how stupid the plaintiff appeared to be when he was on the stand as a witness.

TORT by an employee in a cotton mill for injuries from a machine alleged to be dangerous, with counts at common law and under the employers' liability act, alleging among other things failure to warn the plaintiff of his danger and improper and incorrect instructions as to the operation of the machine. Writ dated July 8, 1901.

At the trial in the Superior Court *Maynard*, J. refused to order a verdict for the defendant and submitted the case to the jury who returned a verdict for the plaintiff in the sum of $2,500. The defendant alleged exceptions.

*W. Hamilton*, for the defendant.

*W. H. McClintock*, for the plaintiff.

LORING, J. This is an action for personal injuries caused by the plaintiff's putting his arm into the beater box of a picker machine in the defendant's cotton mill, to pull some cotton through the feed rolls, which had collected on the other side of them and had stopped the lower feed roll from working.

A picker machine is designed to clean the cotton, as it comes from the bales. It consists of an endless moving apron, some forty inches wide, on which the cotton is placed; the apron delivers the cotton between two fluted feed rolls, which are in contact; as the cotton comes from the feed rolls, the dirt is beaten out of it by the beaters. The beaters consist of two knives or bars, each attached to a revolving shaft by four arms and distant about eight inches from it. These knives make fifteen hundred revolutions a minute, and, as they come opposite the feed rolls, are a quarter to three eighths of an inch distant from them. As the cotton is delivered by the feed rolls, the

two revolving knives beat the dirt out of it; the dirt falls down, and the cotton is carried forward by a draft of air from a fan. The part of the machine where the cotton is beaten by the beater knives is called the beater box, and is covered by a cylindrical iron cover which can be turned back, leaving the interior exposed to view.

The plaintiff is a Pole, who gave his testimony through an interpreter, and at the time of the accident was thirty-five years of age.   On arriving in this country he went directly to the defendant corporation and applied for work.   He had had no previous experience in machinery and was set to learning how to run a picker machine under one Doubrouski; after two weeks' instruction under Doubrouski, he was put to work on a picker machine on wages.   The day after he began work, finding the feed rolls clogged by cotton, he tried to free them by taking hold of the cotton in front of the rolls and pulling it back from them.   This not being successful, the plaintiff opened the beater box and undertook to pull the cotton through the feed rolls and his arm was cut off by the beater knives.

The danger of having his arm struck by the beater knives, which were making fifteen hundred revolutions a minute and were no more than a quarter of an inch away from the feed rolls, was an obvious danger of which the plaintiff cannot be heard to complain.

The plaintiff seeks to take his case out of this rule, by showing that, when he was working under Doubrouski, he had seen him clear out a similar clogging of cotton by putting in his arm where the plaintiff put in his arm, and that he never had been told that the machine ought to be stopped when this was done; and he relies on *De Costa* v. *Hargraves Mills*, 170 Mass. 375, in support of this contention.   But although in *De Costa* v. *Hargraves Mills* the plaintiff was allowed to recover for injuries received while removing a clog from a picker machine in a cotton mill, on the ground that he had not been told that he ought to stop the machine while doing so, it does not cover this case.   In that case the plaintiff was removing a clog formed by the dirty cotton in the box where the dirt falls down when the cotton is beaten by the beater knives; there is a space of seven inches between the floor of the box, where the dirty cotton in question

was, and the beater knives. The clog there in question prevented the cotton which had been beaten from being properly carried on by the fan. The proper way of removing such a clog is to stop the machine, insert the arm and take out the clog; but an experienced workman can put in his arm while the beaters are in motion and take out the clog. The picker boss, who instructed the plaintiff in that case, testified that he had removed clogs while the beaters were running, but he did not allow the men to do so. The plaintiff in that case testified that he had seen the picker boss remove a clog while the machine was running, and that he had not been told to stop the machine when he undertook to do so. But no one could put in his arm with safety to remove a clog in the feed rolls, while the beaters, which are distant at most a quarter of an inch from them, were in motion, and the plaintiff never had seen any one remove a clog under these conditions. There was no duty on the defendant to tell the plaintiff not to put in his arm while the beaters were going, *Sullivan* v. *Simplex Electrical Co.* 178 Mass. 35, *Robinska* v. *Lyman Mills*, 174 Mass. 432, or to tell him to stop the machine when he put in his arm.

The plaintiff also contends that this case is taken out of the rule by testimony to the effect that the beaters were going so fast that they could not be seen. But if that is so, it could have been seen that something was going, and the fact that it could not be seen, what the thing was, which was going, only makes the danger more obvious. In *Veginan* v. *Morse*, 160 Mass. 143, relied on by the plaintiff in this connection, the fact that there were any knives under the table from which the plaintiff, who was not hired to work on machinery, was removing shavings was not obvious.

Another argument put forward by the plaintiff is that he never had been told, and did not know, what the interior construction of the machine was; that is disposed of by *Robinska* v. *Lyman Mills*, 174 Mass. 432, 433.

The plaintiff's last contention is that the jury could have found that he was not of average intelligence, and relies in this connection on the testimony of Doubrouski and the appearance of the plaintiff on the stand. Doubrouski's testimony was: " As to whether Mr. Chmiel learned slowly or rapidly, I say he didn't

have a good head to learn," and again : " Frank showed that he
was n't good to learn and did n't learn well because I showed
him how to oil and then told him how to oil there and the third
time asking him to do it, he did n't do it" ; and in answer to the
question " Any other way?" " The first time he did n't under-
stand it and it took me twice or three times to show him.   As
to whether I had trouble about teaching him anything else about
the machine besides the oiling, I say the first time he did n't
understand, and when I showed him several times he did n't
understand ; as to whether I had any trouble in teaching him
anything else besides oiling the machine, I say when he had to
put the laps he did n't understand, and I took him and showed
him and he did n't understand ; as to whether there was any-
thing else besides the laps and the oiling that I had trouble in
teaching him, I say anything I did he followed me and watched
me doing it ; he was simply going round to see the way I did it."
We do not think that this testimony would warrant the jury in
finding that the defendant had any reason to suppose that the
plaintiff was so dull as to require a caution not to put his arm
where it would come in contact with beater knives making
fifteen hundred revolutions a minute.

We are not concluded from holding that the presiding judge
should have instructed the jury that the risk was an obvious one,
assumed by the plaintiff, by reason of the fact that the plaintiff
was on the stand as a witness and we cannot know how stupid
he then appeared to be.   The same difficulty arises in case the
jury take a view of the premises ; but it has been held in that
connection not to be an insurmountable one.   *Tully* v. *Fitchburg
Railroad,* 134 Mass. 499.

*Exceptions sustained.*