CHARLES W. BOYD *vs.* EDWIN W. TAYLOR & another.

Middlesex.    November 16, 1906. — May 14, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence*, Employer's liability.    *Evidence*, Remoteness.    *Practice, Civil*, Conduct of trial.

In an action by a workman in a sausage factory against his employer for personal injuries from having his hand caught by a revolving feed screw and his arm drawn into the horizontal cylinder of a meat chopping machine while he was pressing the meat with his hands down into the hopper .connected with the cylinder, if it appears that the plaintiff was hired as a common laborer and was without previous experience in the use of any kind of machinery, that he was set at work on this machine without instructions and was told by a superintendent of the defendant to finish the grinding of some meat which the superintendent had begun, that, although he had worked near the machine, his duties were such that before the accident he did not have an opportunity to examine it even superficially, and he had not been informed of its interior construction, that the feed screw was revolving in the cylinder at a speed of about four hundred revolutions a minute, and that at this velocity it became indistinct and was "a sort of blur," that you could "see something moving down there" but could not distinguish anything, and that the accident was caused by the plaintiff's hand being caught by the screw when he pressed the meat down too far, there is evidence for the jury that the defendant was negligent in calling the plaintiff from his ordinary labor and setting him at work to run the chopper without suitable instructions.

In an action by a workman in a sausage factory against his employer for personal injuries from having his hand caught by a revolving feed screw and his arm drawn into the horizontal cylinder of a meat chopping machine while he was pressing the meat with his hands down into the hopper connected with the cylinder, if it appears that the plaintiff was without previous experience in the use of any kind of machinery, that he had had no opportunity to examine the machine on which he was set at work and had not been informed of its interior construction, that he had seen the defendant's superintendent and other grinders when using the machine pressing the meat down into the hopper with their hands, and that, although he knew there were knives in the horizontal cylinder, he was not shown to have known or to have possessed any information which should have led him to anticipate that if he pressed the meat down too far, he might be injured by his hand being caught and his arm drawn into the feed screw, and that the accident happened while he was pursuing the method which he had seen used by the foreman and the other persons in running the chopper, there is evidence for the jury that the plaintiff when injured was in the exercise of due care.

In an action by a workman in a sausage factory against his employer for personal injuries from having his hand caught by a revolving feed screw and his arm drawn into the horizontal cylinder of a meat chopping machine while pressing the meat with his hands down into the hopper connected with the cylinder,

where it appeared that the plaintiff was without experience in the use of any kind of machinery and was set at work upon this machine without instructions and with no information as to its interior construction, the plaintiff called a witness who had been in the sausage making business about eighteen years, who testified that in the course of his experience he had noticed a habit or custom in regard to the sort of men employed on the kind of machine by which the plaintiff was injured and a habit or custom as to giving instructions to men who were set at work to operate such machines. The presiding judge refused to allow the plaintiff to show by this witness that it was the custom among sausage manufacturers in that vicinity to employ only experienced men to run such machines, and that it was not customary to set new or inexperienced men at work to operate them without careful instructions as to their dangers. *Held,* that the exclusion of this evidence was within the discretion of the presiding judge.

TORT for personal injuries incurred on October 30, 1901, while in the employ of the defendants, manufacturers of sausages doing business in Boston under the name of Park's Sausage and Provision Company. Writ dated April 14, 1903.

At the trial in the Superior Court before *Bell,* J. the plaintiff testified that he was born on December 20, 1878, in Annadale, New Brunswick, a town of about three hundred inhabitants, and worked on his father's farm until he was eighteen years old ; that his work consisted principally of driving horses and he had had nothing to do with any machinery; that when eighteen years old he came to the United States and worked as a carpenter for about three years in Chelmsford and for a while in Boston ; that he also had worked for a short time as a motorman for the West End Street Railway Company; that he went to work for the defendants about October 1, 1901; that up to that time he had had no experience with machinery of any sort; that on October 30 following, he was set at work to operate a meat chopping machine run by steam power and known as the Enterprise Chopper No. 62; and that his left arm was torn off at the elbow by the feed screw of the machine. Other evidence is described in the opinion.

At the close of the plaintiff's evidence the judge ordered a verdict for the defendants ; and the plaintiff alleged exceptions to this ruling and also to the exclusion of certain evidence described below.

The evidence excluded was as follows: A witness who had been in the sausage making business about eighteen years testified that in the course of his experience he had noticed a habit

or custom in regard to the sort of men employed on the kind of machine by which the plaintiff was injured and a habit or custom as to giving instructions to men who were set at work to operate such machines.  The plaintiff offered to prove by this witness that among sausage manufacturers in this vicinity it was the custom to employ only experienced men to run these machines, and further that it was not customary to set new or inexperienced men to operate them without careful instructions as to their dangers.  The questions excluded, subject to the plaintiff's exceptions, were the following:

" Now, I will ask you this question: what sort of employees is it customary among sausage makers in this locality to select to operate that machine?"

" Now, Mr. Fistori, will you state what instructions it is customary among sausage makers in this neighborhood to give to employees when they set them to operate, that is, to work that machine?"

*J. Noble, Jr., (H. J. Coolidge* with him,) for the plaintiff.

*P. S. Maher,* for the defendants.

BRALEY, J.   Until the day of the accident, the plaintiff, who had been hired by the defendants as a common laborer in their sausage factory, had not worked at the meat choppers, and from his evidence it appears that before his employment he was without experience in the use of any kind of machinery.  In the preparation of the sausages the meat is run twice through the chopper.  By the first process it is cut in large pieces; by the second the machine, after being properly adjusted, is run at a greater speed for the purpose of grinding the meat finer, after which the product is ready for use.  While the plaintiff was engaged in his usual work, one Dunton, who, upon the evidence, the jury could find lawfully represented the defendants, having called the plaintiff, directed him to run the meat through once, which he did.  Thereupon Dunton shifted the knives, put in a finer plate, and began the second process himself.  When this work had been nearly completed, he directed the plaintiff to finish by grinding the remainder.  In operating the chopper, the meat is fed into a hopper connected with a horizontal cylinder, at the end of which is a perforated plate set against revolving knives.  A rotary feed screw, with a decreasing pitch,

moving at a high speed, receives, carries and forces the meat against this plate, where the knives cut it to the required degree of fineness. The plaintiff while feeding the machine had his arm caught, and drawn into the cylinder, where by coming in contact with the feed screw it was so torn and mangled that it subsequently was amputated. It was undisputed not only that the plaintiff was set at work without previous instructions, but that to cut the meat properly the machine would have to be run at a speed, estimated by a former foreman of the defendants as about four hundred revolutions a minute. Upon attaining this velocity, the feed screw became indistinct, or as described by a mechanical expert, who was familiar with its operation, " it is a sort of blur, you can see something moving down there, but you can't distinguish anything when it is running at two hundred and fifty revolutions." The chance of physical injury attendant upon coming in contact with moving machinery is so well understood from common experience, that it often has been held that an employer is under no duty to warn an employee of this danger, and, if injured where the peril is obvious, he cannot recover. *Ciriack* v. *Merchants' Woolen Co.* 151 Mass. 152. *Lowcock* v. *Franklin Paper Co.* 169 Mass. 313. *Gaudet* v. *Stansfield*, 182 Mass. 451, 454, and cases cited. *Robinska* v. *Lyman Mills*, 174 Mass. 432. *Chmiel* v. *Thorndike Co.* 182 Mass. 112. But while the plaintiff had worked in the vicinity, his duties appear to have been such that before the accident he did not have an opportunity to examine the machine even superficially, nor had he been informed of its interior construction. The peculiar danger to which the plaintiff when at work was exposed consisted in the probability that the operator during the second process, unless familiar with the action of the feed screw, might suffer severe injury by his hand being caught if the meat was pressed down too far. *Joyce* v. *American Writing Paper Co.* 184 Mass. 230. Because of his inexperience and lack of opportunity for sufficient observation to become acquainted with the risk, when considered in connection with the hidden character of the danger, the jury to whom the question should have been submitted, would have been warranted in finding that in calling him from his ordinary labor, and setting him at work to run the chopper without suitable instructions, the defendants

were negligent. *De Costa* v. *Hargraves Mills*, 170 Mass. 375. *Bowden* v. *Marlborough Electric Machine & Lamp Co.* 185 Mass. 549. *Rudberg* v. *Bowden Felting Co.* 188 Mass. 365. *Byrne* v. *Learnard*, 191 Mass. 269.

The defendants, however, further urge that the verdict in their favor was rightly ordered, as the plaintiff was careless. When feeding the machine for the first process, the plaintiff with a fork and shovel placed the meat on a bench which was fitted to the top of the chopper, so that upon being pushed through an opening at the end of the bench, the meat fell into the hopper where it was ground. In undertaking the second process, Dunton, in common with other grinders in the factory, whom the plaintiff had observed, removed the bench, and then fed, and pressed the meat down into the hopper with his hands. The plaintiff, although stating that he knew there were knives in the horizontal cylinder, neither is shown to have known, nor to have been possessed of any information which should have led him to realize or to anticipate that, if the meat was pressed down too far, he might be injured by his hand being caught and his arm drawn into the feed screw. It apparently was uncontroverted, or at least the jury could have found, that his knowledge was limited to his observation of the method used by those running the choppers, including the foreman. In performing his work in the way adopted by those whom he well might have believed understood how the machine could be safely operated, there was evidence from which it could have been determined that he was not guilty of contributory negligence. *Dolan* v. *Boott Cotton Mills*, 185 Mass. 576, 581. *Manning* v. *Excelsior Laundry Co.* 189 Mass. 231. As there must be a new trial at which the question again may arise we deem it proper to say, that the exclusion of the evidence offered by the plaintiff of the custom or practice of other sausage manufacturers to employ only experienced persons, or to instruct those who were inexperienced before directing them to operate similar machines, was within the discretion of the trial judge. *Dolan* v. *Boott Cotton Mills, ubi supra.* In the opinion of a majority of the court the entry must be

*Exceptions sustained.*