JOSEPH WAKEFIELD vs. BOSTON COAL COMPANY.

Suffolk.   December 10, 1907. — February 28, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence.   Agency.   Master and Servant.*

A traveller on a crowded sidewalk of a city street is not necessarily negligent in stepping into an open coal hole, although he sees a coal team backed up toward the building to which the coal hole belongs and a man shovelling scattered coal out of the gutter.

It is the duty of a coal dealer who uses a coal hole in a sidewalk in delivering coal to a customer, to use proper precautions to protect pedestrians from personal injury, and he is not relieved from the performance of this duty because of a corresponding duty on the part of his customer who maintains the coal hole.

A teamster employed by a coal dealer, who is sent to deliver coal and on asking where to deliver it is told by the purchaser to put it in a coal hole in the sidewalk, in using the coal hole after this direction is none the less acting within the scope of his employment as a servant of the coal dealer, who is liable for injuries caused by the servant's negligence in leaving the coal hole open and unguarded.

TORT for personal injuries incurred on March 17, 1904, from stepping into a coal hole in the sidewalk near No. 865 on Washington Street in Boston, alleged to have been left open and unguarded through the negligence of a servant of the defendant. Writ dated July 15, 1904.

In the Superior Court the case was tried before *Stevens,* J. The plaintiff testified on direct examination: "I am sixty-five years of age; on March 17 I was living in Dorchester; I came into town to see the parade; after the parade I started to take a car; I strolled up the street, watching for the cars; I was on Washington Street, nearly opposite No. 865; there was a crowd of people; the hole was open and I stepped into it with my right leg; my leg went down to my waist; two gentlemen came and helped me out; the hole was in the sidewalk, about two feet from the door of the store." On cross-examination, he testified: "I was walking along slowly, and, when I got near the place where I was hurt, there was a coal team in the street, outside the gutter; I saw it several yards before I came near it; I couldn't say how many yards, — eight or ten, perhaps; there was a workman near it; he was in the gutter;

he was shovelling coal; he was taking up coal ·in a shovel; he was facing toward the building; I do not know what he did with the coal; I do not know how much coal there was there; the back of the wagon was toward the building; the wagon was empty; there was only a little coal that was scattered after the man unloaded the cart; the workman was standing in the street; he was about the length or half the length of his shovel from the curbstone; when I saw him standing there shovelling coal out of the gutter, I didn't look toward the building; I looked straight ahead of me; I didn't look down; I didn't see the hole; there was a crowd coming both ways; I couldn't tell how near the people were in front of me;.there may have been no one within two or three feet; this was between three and four o'clock; it was a clear day; I have seen very few coal holes since I have been in Boston; they did not have coal holes in the sidewalk in Charlottetown, Prince Edward Island, where I lived until three years ago."

One Hall, called by the plaintiff, testified on direct examina-·tion: "I keep a store, at 865 Washington Street, known as 'Hall's Beehive'; on the day of the accident I was in the store; I did not see the accident; I saw Mr. Wakefield afterwards in the store; I bought the coal from the Boston Coal Company; I had been buying coal from them for two or three years; it was the Boston Coal Company's wagon and their driver; I had no arrangement or agreement with the coal company whereby I should furnish somebody to watch the open hole." On cross-examination, he testified, among other things, that all he did about the coal was to send an order to the Boston Coal Company; he did not know who opened the coal hole; sometimes the coal hole was opened by the driver, sometimes by one of his employees. On redirect examination, he testified that his employee, one Howard, usually removed the stick underneath the coal hole cover, and the driver pried up the cover.

One Keefe, called by the defendant, testified on direct examination: "In 1904 I was driving for the Boston Coal Company, and on March 17th I was delivering coal at Hall's Beehive; I had ten bags for Hall's Beehive; it was stove coal; I unloaded my bags from the wagon on to the curbstone and waited for the parade to pass; after the parade passed by I went into

the store and gave my tickets to the office; I said I had a half a ton of coal and they told me to put it in the coal hole; I went into the office in the store and then I went out and took up the coal hole cover; I used the shovel to cover the hole; I emptied the bags of coal into the hole, first removing the shovel and putting. it back after I had emptied each bag; I was picking up some loose pieces of coal in my hand; I turned around and saw a man holding on to his ankle." On cross-examination, he testified: " I had delivered coal there before ; it wasn't necessary for a man to tell me to put the coal in the coal hole, it was customary to say that. When I first arrived there I jumped off the team and took my tickets in and told them I had half a ton of coal in bags from the Boston, meaning the Boston Coal Company ; I laid the tickets down and he says, put it in the coal hole, he didn't want me to carry it in the store, I suppose."

There was other testimony on both sides. At the close of the evidence the defendant asked the judge to give the following instructions :

1. On all the evidence the plaintiff cannot recover.

2. If the occupants of the store where the coal was being delivered had the right to direct or control the mode or manner of the delivery, then this action cannot be maintained.

3. If the occupants of the store, No. 865 Washington Street, had the right to direct or control the mode or manner of delivery of the coal, then I instruct you that the teamster would be the servant of the occupants so as to render them liable for injuries occasioned by his negligence or carelessness in the delivery of the coal, although at that time he was in the general employ of the Boston Coal Company.

The judge refused to give these instructions, but instructed the jury that they must determine whether the driver was acting under the control and direction of Hall or under the control and direction of the Boston Coal Company. The jury returned a verdict for the plaintiff in the sum of $1,500 ; and the defendant alleged exceptions.

The case was submitted on briefs.

*N. Matthews, W. G. Thompson & R. Spring,* for the defendant.
*J. J. O'Connor, W. J. Corcoran & C. E. Walsh,* for the plaintiff.

BRALEY, J. It is settled, that generally a traveller who suffers personal injuries from a defective public way is not as matter of law precluded from recovery simply because he had previous knowledge of the defect. *Torphy* v. *Fall River*, 188 Mass. 310, 314. *Campbell* v. *Boston*, 189 Mass. 7, 10. Under the authority of these decisions, the plaintiff's conduct could have been found consistent with the ordinary care of prudent travellers. The volume of travel in both directions being large, if the plaintiff as he walked failed to see and avoid the hole into which he fell, although observing a coal team with the back of the wagon toward the building, with a workman shovelling scattered coal out of the gutter, the jury could say, that these facts failed to prove anything more than the exercise of the ordinary freedom of locomotion, which every traveller has the right to enjoy while using the public ways, without being held guilty of contributory negligence. *Hennessey* v. *Taylor*, 189 Mass. 583. The duty of the defendant, while using the coal hole as a means of delivering coal to its customer, to use proper precautions to protect pedestrians from personal injury, and that from the discharge of this duty it was not relieved by reason of a corresponding obligation on the part of the customer, has been fully defined in the recent case of *French* v. *Boston Coal Co.* 195 Mass. 334, and no further exposition would be warranted. If during delivery, by reason of the conditions of travel the opening became dangerous, then, if left either wholly uncovered or insufficiently guarded by the teamster, this neglect furnished evidence of negligence. *French* v. *Boston Coal Co., ubi supra* . Unless the cover was removed the sale could not be perfected, for delivery included transferring the coal from the wagon to the purchaser's premises. The service of the teamster was entire, even if, in response to his inquiry, directions had been given to him by the purchaser to use the coal hole, and being within the scope of his employment, the defendant, as the master, remained responsible for the negligent acts of its servant. *Driscoll* v. *Towle*, 181 Mass. 416. *Oulighan* v. *Butler*, 189 Mass. 287, 290.

*Exceptions overruled.*