CHARLES H. PICQUETT *vs.* WELLINGTON-WILD COAL COMPANY.

Suffolk.    November 9, 1908. — January 6, 1909.

Present : KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Negligence,* In use of highway.    *Practice, Civil,* Judge's charge.

In an action against a coal company for personal injuries from falling down a coal hole in the sidewalk of a city street, which was negligently left open and unguarded by the servants of the defendant, there was evidence that the accident happened late in a snowy afternoon in the month of January, when it was very dark, that the plaintiff saw the defendant's coal team at the sidewalk and supposed that coal was being delivered from it into a coal hole, that he went into

the street to go around the horses' heads, but, finding the street slushy, returned to the sidewalk, that he walked close to the side of the building and could not see any coal, that he saw something black on the sidewalk close to the rear of the team and a man poking a few pieces of coal left in the cart and thought that the delivery of the coal was finished and that the coal hole was closed, that, while thus going close to the building so that his shoulder was four or five inches from it, he fell into the coal hole, which was rectangular and measured twenty-two inches by thirty-four inches, whereas the ordinary coal hole is circular and is from twelve to fifteen inches in diameter. On cross-examination the plaintiff testified that he went around the team to avoid disaster, that "the disaster might have been a coal heap," and that he did not look to see whether any coal hole was there. *Held*, that there was evidence for the jury that the plaintiff was in the exercise of due care; that the fact that the plaintiff did not look for the coal hole might have been due to the darkness being so dense that looking would not have disclosed its situation, and that his statement, elicited on cross-examination, that he went into the street to avoid disaster, and then, on finding it slushy, returned to the sidewalk, did not as matter of law show knowledge of the danger and appreciation of its extent.

The provision of R. L. c. 173, § 80, that "the courts shall not charge juries with respect to matters of fact," does not make it improper for the presiding judge, in charging the jury in an action against a coal company for personal injuries from falling into a coal hole alleged to have been left open and unguarded by the servants of the defendant, upon the question whether a warning given to the plaintiff by the driver of the defendant's coal team, if given at all, was given too late, to use the illustration of a "scorcher" bicycle rider who said to a man just as he ran over him "Look out!" Whereupon the man said "For heaven's sake, are you coming back again?"

TORT for personal injuries from falling into a coal hole alleged to have been left open and unguarded by servants of the defendant. Writ dated September 9, 1904.

In the Superior Court the case was tried before *Harris*, J., who refused to order a verdict for the defendant and submitted the case to the jury. The evidence upon the issue, whether the plaintiff was in the exercise of due care at the time of the accident, is described in the opinion.

The portion of the judge's charge containing the illustration referred to in the opinion, to which the defendant excepted, was as follows:

"The plaintiff contends in answer to that, that even if there was a warning given by saying 'look out' it was the belated warning after the fall. To make an illustration, taking my illustration perhaps from authorities not usually brought into court, it is a question whether, if there was any warning given, it was a real warning before the plaintiff put himself in the place of danger, or whether it was the warning given by the

'scorcher' bicycle rider to the man whom he ran over. who said, 'Look out' to him just as he ran over him, and the man said, 'For heaven's sake, are you coming back again?' Well, that is not a usual authority but it illustrates the situation, whether it was a real warning or whether it was the involuntary exclamation that we are apt to make when we see a person in a place of danger and we think likely to be hurt. Now, that is a fair question of fact."

Before the charge, "the plaintiff's counsel had argued without objection on the defendant's part that if any warning was given, it was probably after the plaintiff had lifted his last foot in the air and was descending through the hole."

The jury returned a verdict for the plaintiff in the sum of $4,000; and the defendant alleged exceptions.

*J. Lowell & J. A. Lowell*, for the defendant.

*E. F. McClennen*, for the plaintiff.

Rugg, J.    The plaintiff seeks in this action of tort to recover for personal injuries received by falling into a coal hole, while travelling on a public way in Boston. At about half-past five o'clock, on the afternoon of a snowy day in early January, the plaintiff was walking along Arch Street, when he saw the defendant's coal team at the sidewalk, and supposed that coal was being delivered from it into a coal hole. He went into the street to go around the horses' heads, but finding the street slushy, returned to the sidewalk. The plaintiff's testimony tended to show that the place was dark, that one could see an object, but could not tell a man's face, that he walked close to the side of the building, and could not see any coal, but saw something black on the sidewalk, close to the rear of the team and a man poking a few pieces of coal left in the cart, and while thus going close to the building so that his shoulder was four or five inches from it, he fell into the coal hole; and that this hole was rectangular, twenty-two inches by thirty-four inches, while the ordinary coal hole is circular in shape, and twelve to fifteen inches in diameter. The defendant strongly argues that there was no sufficient evidence to warrant a finding that the plaintiff was in the exercise of due care, basing this contention largely upon the plaintiff's statement in his cross-examination that he "went around the team to avoid disaster. The disaster might

have been a coal heap. . . . He didn't look to see if any coal hole was there." Too much weight, however, cannot be attached to isolated expressions of a witness. His conduct as to due care must be determined in the light of all the circumstances of action and omission, and of the knowledge that he had or ought to have had at the time as well as of detached scraps of testimony, which the jury may regard as the result of too severe stress or strategic skill in cross-examination and weigh accordingly. The jury might have found upon this evidence that the sidewalk was a more convenient and reasonable place for pedestrians than the street, in the then existing weather, that the appearance of the sidewalk in connection with the cart in the dim light was such as to justify the inference, which the plaintiff testified he drew, that the delivery of the coal was finished, the lantern taken away and the coal hole closed, and that the plaintiff saw only the dark spot next the curbing and walked as near as he conveniently could to the building, where coal holes are not commonly found. These conditions, if found to exist, together with the fact that the opening was of different shape and of materially larger dimensions than the ordinary coal hole, and was not plainly visible nor seen by the plaintiff, are enough to sustain the finding that he was in the exercise of ordinary care. That he did not look for the coal hole may have been found to be due to the darkness being so dense that looking would not have disclosed it. His statement, that he went into the street to avoid disaster, and then, on finding it slushy, returned to the sidewalk, cannot be ruled as matter of law to have constituted knowledge of the danger and appreciation of its extent, but was rather a graphic way of stating his design in first leaving the sidewalk. In conjunction with his other testimony, it certainly did not fix him with knowledge of the existing danger. It was for the jury under all the circumstances to draw what inferences seemed reasonable to them, as men of experience in the common affairs of life, not only from what the plaintiff knew or could have known of the precise condition existing on the sidewalk, but also from his consciousness that the defendant in delivering coal owed a duty to those passing upon the sidewalk to see that the coal hole was properly guarded and protected so that pedestrians would not be liable to fall in. The case is well within recent

decisions. *French* v. *Boston Coal Co.* 195 Mass. 334. *Owens* v. *Harvard Brewing Co.* 194 Mass. 498. *Wakefield* v. *Boston Coal Co.* 197 Mass. 527.

The defendant also complains of an illustration given by the judge, as being a charge upon the facts within the prohibition of R. L. c. 173, § 80. There was conflicting evidence as to whether the plaintiff had been warned of danger by the defendant's driver. One issue apparently was whether any warning, if given, was timely or too late. The illustration given is not open to objection. While it was picturesque and pointed, it was apposite to the evidence which the jury were to consider and to one of the questions which they must pass upon. It falls within the authority of the court in charging a jury, as stated at length in the cases of *Whitney* v. *Wellesley & Boston Street Railway*, 197 Mass. 495 and *Plummer* v. *Boston Elevated Railway*, 198 Mass. 499. These principles have been so recently and so fully discussed that it is not necessary now to amplify them further.

*Exceptions overruled.*