JAMES L. DONOVAN *vs.* CHASE-SHAWMUT COMPANY.

Suffolk.    January 19, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability.    *Witness,* Cross-examination.

If an inexperienced boy sixteen years of age is put at work upon a press for cutting narrow strips of copper, called wire, and the knife which cuts the wire is started by pressing a treadle, but the machine is out of order so that the knife sometimes comes down two or more times when the treadle has been pressed only once, and sometimes comes down without any pressure at all, and the boy sees this happen, but, being ignorant of machines, does not know whether the press is out of order or not, and if the reel from which the wire is fed into the cutting press requires constant attention to prevent the wire from spreading out and sometimes gets stuck so that the operator has to take hold of the wire and pull it, and if this boy, having been given no warning of danger, after he has worked upon the cutting press less than three hours, of which the first two hours were at night on the day before the accident, takes hold of the wire to pull it because the reel has stuck, and his hand slips off the wire and comes under the knife of the press just as it is descending automatically without the boy having pushed the treadle, in an action by the boy against his employer for his injuries thus caused, it cannot be ruled as matter of law that this was an accident of which the plaintiff accepted the risk by continuing at the work, and, assuming that there is evidence of negligence on the part of the defendant, he is entitled to go to the jury, his knowledge that on some previous occasions the knife which caused his injuries had come down without pressure on the treadle not being decisive against his recovery, because appreciation of the significance of the event as well as knowledge of it is necessary to charge him with assumption of the risk.

In an action for personal injuries, which were received while the plaintiff was in the defendant's employ more than six years before the time of the trial and when the plaintiff was an inexperienced boy sixteen years of age, if certain answers of the plaintiff upon his cross-examination, when separated from his other testimony, appear to indicate a comprehension on his part of the danger which he incurred in the defendant's employ, but some of the defendant's questions were so phrased as to appear to refer to the time of the trial, others were ambiguous in this regard, and still others by trifling changes referred to the time of the accident, it is proper for the jury to consider whether the plaintiff's expressions apparently manifesting appreciation of the danger were intelligent assertions of a knowledge possessed at the time of the injury or were the result of an acute cross-examination addressed to a wearied or confused intellect and eliciting acquiescence by skilfully framed questions.

To set an inexperienced boy sixteen years of age at work upon a machine press used for cutting narrow strips of copper by a knife, which when the machine is in order comes down only upon the pressing of a treadle, but which at the time that the boy is put at work also comes down without such pressure, and to furnish the boy with a reel from which the strips of copper are fed into the cutting press which is defective and frequently gets stuck so that the operator

has to pull the strip of copper with his hand, and to give the boy no warning of the dangerous character of his employment, although the defects in both the press and the reel have existed during a period of two months and the employer frequently has been notified of their existence, is evidence of negligence toward the boy on the part of his employer in an action brought by the boy against the employer for having his fingers cut off by the knife coming down automatically, when the boy's hand had slipped from the strip of copper in pulling at it, because the reel had stuck, and was directly under the knife.

TORT at common law by James L. Donovan, a minor, by his father and next friend Michael Donovan, for personal injuries received by the plaintiff on May 19, 1903, while in the employ of the defendant.   Writ dated March 14, 1906.

In the Superior Court the case was tried before *Brown,* J.

At the time of the accident, the plaintiff was operating a machine known as a " Perkins Press " used for cutting off pieces from what is variously referred to in the evidence as " bond wire " or " bond strips."

The machine was operated by means of a treadle which when pressed down would cause a knife to descend and cut the wire or strips at the desired length.

The roll of " wire " was on a portable reel standing on the floor a foot or so from the machine, immediately to the right of the operator, and was not connected with the machine itself. The " wire " was merely a narrow strip of copper very thin and about one quarter of an inch wide.   There was upon the machine just at the right of the knife a slot through which the " wire " passed, just large enough to allow it to pass through ; this slot was about four inches long and was at right angles with the blade of the knife.   To the left of the knife and on the same elevation as the slot there was a small table surface along which the wire passed to a gauge which would stop the wire, enabling the operator to cut it off at the desired length.

After there was an accumulation of about twenty of the wires they would work off the table automatically and sometimes would be pushed off by the operator into a basket or receptacle placed in position for that purpose.

The plaintiff testified that he was sixteen years of age at the time of the accident on May 19, 1903 ; that he first went to work for the defendant on May 12, 1903; that he had never worked

anywhere before and had left school about one week before he went to work.

About eight o'clock on May 18, the foreman in charge set the plaintiff at work first on another machine for five minutes, and then brought him into the machine shop and set him at work at the "Perkins Press," the cutting machine by which he was hurt. The plaintiff continued: "He took me out and he brought a young fellow out with him to show me how to work the machine; and he left then and went back into the other room. This young fellow sat down for about four or five minutes and cut off and just showed me and said: 'I guess you know how to do it all right'; so I sat down and worked, I guess until ten o'clock that night."

He explained the nature of the work: "It was cutting strips. There is a roll of copper about six inches in circumference, or more — I don't know which — about that big. And it is put on to a reel, with two pieces of wood about as big as pie plates. It is put on to a reel — on to a little pivot, and turns around — put on to what they call a reel, and it starts here. It is put about two feet away from the machine. You take the copper strip, about a sixteenth of an inch thick and quarter of an inch wide, and have to keep pressing it through the machine until it goes so far, and then cut it off by putting your foot down. Sometimes it comes off the reel and crumples up, and then you have to put it on the top and cut off the piece, and start it back and put it through the slot again."

He testified that the reel was all wood about two feet off the floor and movable. "You could move it any place. The machine was about as high as the witness stand and you could sit down while working. The strips were cut by a die. As you put your foot on the lever and pressed it down, down would come the die and cut it off," and the die would "shoot back again when you took your foot off." He testified that he worked until ten o'clock that night and used up about four rolls of wire; that he came back to work the next morning about 7.30 and worked on the same cutting machine for about three quarters of an hour when the accident happened; that there was a peculiarity about this machine that "when you pressed your foot on the lever it would come down two or three times sometimes;

and that sometimes it would start to work without your foot on it at all, it would come down."

"Q. Did you notice that sometimes the night before? A. I did. But I didn't know whether it was out of order or not. I didn't know anything about machines. — Q. Did anybody ever tell you about this coming down without your putting your foot on the treadle? A. No, sir. — Q. Were you ever given any caution or warning about it? A. No, sir. — Q. Did Mr. Malin [the foreman] say anything at all to you about that machine? A. No, sir. — Q. Did the boy? A. No, sir. — Q. Now, won't you please state just how the accident happened? A. I was working about three quarters of an hour that morning; I was cutting off and it came off the roll and crumpled up and I was told the night before when it got crumpled up to put it over the top. So I was putting it on the top and was pushing it off and the knife came down and cut my fingers off. — Q. Did you have your foot on the treadle? A. No, sir. — Q. Now, was there any trouble that time with the reel? A. Oh yes, the reel got stuck. That is what caused it. — Q. Now, won't you please state what was the consequence when the reel got stuck and what made it stick? A. There is two round pieces of wood that spread out and that caused the reel to open up. After that begins you have to get up and put a washer in it. That will make it tighter. It would get loose every hour or two; so you would have to put the washer on all the time so that this copper wire would not spread out. — Q. Did you call anybody's attention to that? A. No, sir. — Q. Now, was that the condition of the reel at the time that you got caught? A. Yes, it got stuck."

There was evidence that for a period of two months before the time of the accident both the press and the reel were frequently out of order, and that this was reported to the defendant's foreman, but that no repairs were made either upon the press or the reel.

Other evidence is described in the opinion. At the close of the plaintiff's evidence, the judge at the request of the defendant ruled that the evidence was not sufficient to support the case, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. A. McGeough,* for the plaintiff.

*M. O. Garner,* for the defendant.

RUGG, J.   The plaintiff was sixteen years old at the time of his injury.   In an action growing out of the same injury the plaintiff's father was permitted to hold a verdict in his favor. *Donovan* v. *Chase-Shawmut Co.* 201 Mass. 357.   The plaintiff was unfamiliar with machinery until he entered the employ of the defendant about a week before receiving the injury, and had worked upon the press less than two hours the night before, and about three quarters of an hour on the morning of the accident. The machine was designed to be started by a treadle, but it would start and repeat sometimes when the treadle was not used.

The question of the plaintiff's due care was for the jury.   He was young and inexperienced.   He was put at work without warning on a machine, which by reason of automatic starting may have been found to have been defective.   *Rudberg* v. *Bowden Felting Co.* 188 Mass. 365.   *Boyd* v. *Taylor,* 195 Mass. 272; *S. C.* 202 Mass. 213.

The danger of automatic starting could not have been discovered by an ordinary person on inspection.   It was therefore not assumed by the contract of employment, and the duty was cast upon the defendant to give such warning and instructions as would enable the plaintiff to comprehend the peril he would encounter in the course of his service.   *Ryan* v. *Fall River Iron Works,* 200 Mass. 188.   *Crimmins* v. *Booth,* 202 Mass. 17.

The defendant strongly contends that upon the record now before us it appears that the plaintiff fully understood and appreciated all the risk he encountered, and that as he continued in the employment without compulsion or exigency he cannot recover.   *O'Toole* v. *Pruyn,* 201 Mass. 126.   No warnings whatever were given to the plaintiff as to the repeating or starting from a state of rest by the machine.   He testified that the machine was not a simple one to him, that it had repeated, (that is, the knife on it had come down two or more times when the treadle was pressed only once,) five or six times on the night before, and twice in the morning, and that, on the night before, it had come down once or twice without pressure on the treadle, that the reel from which the copper wire was fed into the cutting press was so constructed that it required constant attention to prevent the copper from spreading out, and that sometimes the

reel stuck so that he had to take hold of the wire and pull it. The reel stuck, the plaintiff took hold of the wire to pull it, his hand slipped off and came under the knife of the press just as it descended of its own motion without pressure on the treadle, and he was injured. It does not appear that his hold on the copper wire had slipped at any time before, when the reel had stuck. He further testified that he realized that if his hand slipped while pulling the wire and the knife of the press came down, his hand would be cut and his hand might slip if he pulled on the wire while the reel stuck. Knowledge that on some previous occasion the event had happened, which caused the injury, is not decisive against recovery. There must be appreciation of the significance of the event as well as knowledge. *Arnold* v. *Harrington Cutlery Co*. 189 Mass. 547, 550.

Accent upon a part of the plaintiff's testimony to the exclusion of the rest indicates a comprehension of the danger he incurred, but the answers relied upon as decisive against the plaintiff came on a cross-examination, in which some of the questions were so phrased as to appear to refer to the time of the trial, others were in this regard ambiguous, and still others, by a trifling change, referred to the time of the accident six or seven years before. Under such circumstances, whether the plaintiff's expressions apparently manifesting appreciation of danger were intelligent assertions of a knowledge possessed at the time of the injury or the result of acute cross-examination directed to a wearied or confused intellect and eliciting acquiescence to skilfully framed questions was a proper subject for consideration by the jury. *Doolan* v. *Pocasset Manuf. Co*. 200 Mass. 200, 203. *Picquett* v. *Wellington-Wild Coal Co*. 200 Mass. 470.

The plaintiff suffered harm from the concurrence of a badly operating reel and an automatically starting press, both of which point to a failure of duty on the part of the defendant, in combination with the slipping of the hand in the performance of his duty, and all occurring in an experience upon the machines of less than three hours, two of which were at night, and without any warning having been given him as to the dangerous character of the employment. That under these circumstances and within so brief a time an inexperienced lad of sixteen, such as

the plaintiff was, unaided by anything save his own observation, worked out in his mind an understanding comprehension of the dangers under which he labored and determined voluntarily to continue at his task, could not have been ruled as matter of law. *Halley* v. *Nashua River Paper Co.* 202 Mass. 164. *Lynch* v. *Lynn Box Co.* 200 Mass. 340. *Packer* v. *Thomson-Houston Electric Co.* 175 Mass. 496. *Moylon* v. *D. S. McDonald Co.* 188 Mass. 499.

There was sufficient evidence to require a submission to the jury of the defendant's negligence. This point is disposed of by *Donovan* v. *Chase-Shawmut Co.* 201 Mass. 357.

*Exceptions sustained.*