JOSEPH COMPARONE *vs.* STILLWATER WORSTED CO.

JULY 9, 1915.

PRESENT: Johnson, C. J., Sweetland, Vincent, and Baker, JJ.

(1)   *Master and Servant.   Negligence.   Warning Servant.   Hidden Danger.*
Where a servant, who without previous knowledge of machinery and without any knowledge or instruction as to the construction of a particular machine, or as to its manner of operation, has once been shown by an expert how to do

a highly dangerous thing in regard to that machine and then is directed to do the thing and while doing it, as he has been shown is injured by reason of perils which he could not observe, but which were inherent in the thing he was directed to do, the question of the negligence of the master in failing to instruct and warn the servant and the question of the assumption of risk by the servant are for the jury.

VINCENT, J., dissents.

TRESPASS ON THE CASE. Heard on exceptions of plaintiff and sustained.

SWEETLAND, J. This is an action of trespass on the case to recover damages for injuries alleged to have been received by the plaintiff while in the employ of the defendant by reason of the neglect of the defendant to properly instruct the plaintiff of the dangers connected with the work he was directed to perform.

On the trial of said case before a justice of the Superior Court sitting with a jury, at the conclusion of the plaintiff's evidence, said justice nonsuited the plaintiff on the ground that the evidence showed that the defendant was not guilty of negligence and that the plaintiff was negligent. To this ruling of said justice the plaintiff excepted. The case is before us upon said exception and upon five other exceptions taken to certain rulings of said justice made during the trial.

We will consider the plaintiff's exception to the nonsuit which is numbered six upon his bill of exceptions. If submitted to them the jury would have been at liberty to find from the evidence the following facts. The plaintiff was an Italian who up to four months before the accident in question had worked as a common laborer out of doors with pick and shovel. He was entirely unacquainted with machinery at the time of the accident.` He had been employed for a short time by the defendant to sweep the floor, carry water and yarn in the drying room of the defendant's factory. Upon the floor in said drying room was a blower or fan used to assist in drying yarn which was hung about said room. Said fan consisted of blades attached to a shaft, upon which shaft was a loose pulley and a tight pulley, around which pulleys was a belt extending to the pulley of an overhead shaft, from which power was trans-

mitted by said belt to operate the fan. Said belt was broader than the tight pulley and nearly covered both tight and loose pulleys so that said fan could not be stopped, while the overhead pulley was in motion, without removing said belt therefrom. The plaintiff had never seen this or any other like fan at rest; nor had he seen any such fan in motion prior to his employment in said drying room. The blades of said fan were surrounded by a cylindrical metal frame. or drum, slightly broader than the blades of said fan, and about thirty inches in diameter. From the edges of the circumference of said drum on either side were four narrow metal strips or spokes extending to and attached to a circular collar around the shaft of the fan; which collar was not attached to said shaft. Within this frame, when the fan was being operated, the blades of the fan and that portion of the shaft to which they were attached revolved at so great a speed that said blades could not be seen and from appearances one might not realize that there was anything. running within the frame. Because said belt covered both the tight and loose pulleys the fan could not readily be stopped when it was necessary to oil the mechanism; and the same was oiled when the fan was in motion. There was a tendency for the belt while in motion to creep from side to side upon the face of said pulleys, being at some; times nearer said frame than at others. The oil cup or hole into which the oil was dropped was partly under said collar, which was around the shaft of the fan, and on the side of said collar nearest to said belt. The oil can furnished by the. defendant and used in oiling said mechanism was about. six inches long altogether, including the length of the nozzle, which was one and five-eighths inches long. The body of said oil can was cylindrical in shape and about two and one-half inches in diameter. The distance from the edge of the face of the pulley to the shaft to which it was attached was about three and one-quarter inches. The distance between the edge of the face of said pulley on the side nearest the fan frame and the metal strips or spokes

·of the fan frame was about two and one-half inches. The rapidly moving belt if touched would cut or burn the flesh. Said mechanism was exhibited before the jury in the Superior ·Court and has been exhibited before us. It is apparent that to oil said mechanism safely while it is in motion with ·said oil can one must take the can in his hand and place the end of its nozzle down in the space about three inches deep and two and one-half inches wide between the pulley and the fan frame and into the oil cup or hole under said collar of the fan frame, at the same time avoiding on one side the rapidly moving belt with its tendency to cut or burn the hand or ·deflect the oil can, and also taking extreme care that no portion of the hand is allowed to get within the open fan frame on the other side. To do this seems almost an impossibility; it is clearly an operation requiring great skill and one involving great danger. To have notice of the ·caution that would be required to perform it safely one should have an opportunity to examine the machine at rest and to see the distance between the edges of the fan blades and the spokes of the fan frame, or he should be thoroughly informed of that fact and also of the liability of the belt to creep at times towards the fan frame involving the possibility that it might touch the hand or deflect the oil can.

For some time before the accident said mechanism had usually been oiled by a workman named Lenzi. It might be found from the testimony that the defendant's overseer directed the plaintiff to oil the fan mechanism, but did not give him any instruction as to the method of oiling it or of the construction of the machine or of the perils of the operation; that it was left to said Lenzi to do so and that said Lenzi did show the plaintiff once how to oil the machine, but did not caution him as to any danger connected with the oiling; that the plaintiff oiled the machine two or three times before the accident and always in the way Lenzi showed him; that on the occasion of the accident he was again oiling the machine, as Lenzi had shown him, and his

hand was severely cut by the fan blades.  The plaintiff did did not give a very precise account of just how the accident took place.  Because of the suddenness with which it occurred it would be surprising if he could truthfully do so.

The justice presiding nonsuited the plaintiff largely for the reason that he found in the testimony of the plaintiff an admission that just before the accident he placed his hand inside the fan frame.  It does not clearly appear to us that the plaintiff did make such admission.  The plaintiff testified through an interpreter.  The testimony to which said justice referred seems to us to admit of the construction that the plaintiff put his hand in the space between the fan frame and the pulley and not inside the frame.  The plaintiff a number of times in his testimony denied that he placed his hand inside the fan frame.  Said justice based his ruling on the authority of two Massachusetts cases.  *Robinska* v. *Lyman Mills*, 174 Mass. 432, and *Chmiel* v. *Thorndike Co.*, 182 Mass. 112.  These cases support the doctrine that a workman who voluntarily puts his hand into the recesses of a going machine without knowing what he will meet cannot maintain an action against his employer for the injury, on the ground that he should have been warned of the danger.  The case at bar is distinguishable from the line of cases to which the two Massachusetts cases, referred to, belong.  The testimony for the plaintiff might be found to present the case of a workman who, without previous knowledge of machinery and without any knowledge or instruction as to the construction of a particular machine, or as to its manner of operation, has once been shown by an expert how to do a highly dangerous thing in regard to that machine; who then is directed to do the thing, and while doing it, as he has been shown, is injured by reason of perils which he could not observe, but which were inherent in the thing he was directed to do.  In such circumstances the question of the negligence of the employer in failing to instruct and warn the employee, and the question of the assumption of risk by the workman, are for the jury.  The plaintiff did not know, although

from the testimony it might be found that there was a side
play of the fan blades towards the spokes of the frame; that
there was a tendency in the belt to work at times toward the
fan frame; and that the blades of the fan were much nearer
the spokes of the frame at one point on said spokes than at
other points.    The plaintiff had no knowledge as to shape
or nature of the fan which was inside of the frame, and he did
not know how near said blades came to the frame.    It was
essential that he should know these facts in order to under-
stand the danger of the operation he was directed to perform.
This case, in its essential features, resembles a line of cases
which in Massachusetts have been distinguished from the
*Robinska* and *Chmiel* cases relied on by said justice.    In one
such case, *Byrne* v. *Learnard*, 191 Mass. 269, the court was
dealing with the circumstances of an inexperienced workman
placed at work on a meat chopping machine; into the opening
or tunnel of which he was shown how to press the meat with
his hands by the superintendent.    While doing so the meat
went with a plunge from his hands into the machine and
his hand was also taken into the machine and injured.
The court said: "Here the jury might have found that the
plaintiff was put to work upon the machine when it was in
motion and the danger of letting the hands get into the
tunnel was not obvious, and when he was manifestly wholly
ignorant of the situation and of the risks involved; and that
he was instructed to push the fat into the tunnel with both
hands in a way that could be safe only if there was no
danger in the hands getting into the tunnel.    The whole
mechanism of the machine was concealed from his view.
In view of the instructions which the jury might find that he
had received, they might also find that he was justified in
believing that anything dangerous in the internal arrange-
ment of the machine was situated further along in the
body, and not directly under the tunnel.    And if, as he
testified, he followed exactly the directions which he received,
they also might find that he was in the exercise of due care.
We do not think that it can be said as matter of law that he

assumed the risk.   And the jury might have found that the accident was due to the negligence of Hapgood, the defendant's superintendent, in instructing the plaintiff to do his work in an improper and dangerous manner, and in failing to warn him of the risk of injury that he thereby incurred." See, also, *De Costa* v. *Hargraves Mills,* 170 Mass. 375.   The case of *Joyce* v. *American Co.,* 184 Mass. 230, was the case of injuries to a boy fifteen years old.   While the obligation of instruction and warning is greater in the case of children than in that of adults, the court lays down a rule which is applicable to the case of any inexperienced workman.   The court said:   "What distinguishes the case from *Robinska* v. *Lyman Mills,* 174 Mass. 432, and *Chmiel* v. *Thorndike Co.,* 182 Mass. 112, in the first place is that the jury were warranted in finding that plaintiff in the case at bar was doing what he was told to do.   He testified that he was told to do as the Polander did, and that the Polander removed the rags with a stick as he was doing.   In this respect the case is somewhat like *De Costa* v. *Hargraves Mills,* 170 Mass. 375."

In *Boyd* v. *Taylor,* 195 Mass. 275, the court said:   "The peculiar danger to which the plaintiff when at work was exposed consisted in the probability that the operator during the second process, unless familiar with the action of the feed screw, might suffer severe injury by his hand being caught if the meat was pressed down too far.   *Joyce* v. *American Writing Paper Co.,* 184 Mass. 230.   Because of his inexperience and lack of opportunity for sufficient observation to become acquainted with the risk, when considered in connection with the hidden character of the danger, the jury to whom the question should have been submitted, would have been warranted in finding that in calling him from his ordinary labor, and setting him at work to run the chopper without suitable instruction, the defendants were negligent."

This court said in *Manzi* v. *Washburn Wire Co.,* 29 R. I. 460:   "It is well settled that, where an employee is called upon to operate some dangerous machine which is new to him, and outside of his general employment, and which is so

constructed that the danger thereof is not obvious, it is the duty of the employer to give him proper instruction and warning in connection therewith. . . . It cannot be said as matter of law that the plaintiff assumed the risks of the employment when he was ignorant of facts on which a proper appreciation of risk depended."

The ruling of said justice nonsuiting the plaintiff was erroneous.

We have examined the other rulings of said justice to which exceptions were taken and which the plaintiff has brought before us. In our opinion neither of said rulings. constitutes reversible error.

The sixth exception of the plaintiff is sustained; all the other exceptions are overruled. The case is remitted to the Superior Court for a new trial.

*Philip S. Knauer,* for plaintiff.

*Walter J. Ladd,* of counsel.

*C. M. Van Slyck, Frederick A. Jones,* for defendant.

