NATHANIEL M. NELSON *vs.* J. H. WINCHELL AND COMPANY & another.

Essex. November 4, 1908. — June 24, 1909.*

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Trademark. Equity Jurisdiction,* To restrain unlawful use of trademark, Plaintiff must come into court with clean hands, Damages, Laches, Advice of counsel, Profits, Appeal. *Equity Pleading and Practice,* Motion for modification of decree. *Interest. Jurisdiction.*

A jobber, not a manufacturer, who sells shoes which are manufactured solely for him and under his direction and control, may create and establish under R. L. c. 72, § 7, a valid trademark by which the shoes are designated.

A jobber, doing business under the name of the Washington Shoe Company, and selling shoes known to the trade and the public as the "Washington Shoe," who is the lawful owner of a valuable trademark recorded under R. L. c. 72, § 7, consisting of the word "Washington" and a portrait of George Washington, may grant a license for the temporary use of his trademark during a limited period without any abandonment of his rights after the termination of the license.

In a suit in equity to restrain the defendants, manufacturers of shoes, from using a trademark of the plaintiff and to recover profits alleged to have been realized

---

* The opinion in this case was withdrawn on an application for a rehearing. This was denied on September 8, 1909, when the opinion was returned to the Reporter.

from its unlawful use, it appeared that the plaintiff was a jobber, not a manufacturer, who sold shoes which were manufactured by the defendants and others solely for him and under his direction and control, and had created and established a valuable trademark, that he entered the employ of the defendants under an oral agreement, by which they took over the business which he had carried on, and manufactured and sold shoes stamped with his trademark, he having charge of this part of their business as long as he remained in their employ, that after a period of about two years the plaintiff rightfully left the employ of the defendants and the license of the defendants to use his trademark was terminated, but that the defendants continued to use it after notice from the plaintiff not to do so. The plaintiff, before he entered the employ of the defendants, did business under the name of the Washington Shoe Company, and his trademark consisted of a label with the word " Washington " and a portrait of George Washington. At the argument before this court, the defendants for the first time attempted to set up the defense, that, although the plaintiff's trademark was valid, equity would not lend its aid against infringers of it, because the plaintiff did not come into court with clean hands, having represented to the dealers to whom he made sales in the name of the Washington Shoe Company, that that company was the manufacturer of the shoes which he sold with the label of " Washington." It appeared that the plaintiff was known to the trade as a manufacturer and not as a jobber, and that the letter head used by him read as follows : " Washington Shoe Co., Manufacturers of Specialties. Men's, Boys' and Youth's Shoes." *Held*, that, in the light of the other evidence, the fact that the plaintiff's letter head contained the words quoted did not establish the further fact that he was deceiving his customers by false representations that he was the manufacturer of the shoes, and that the label itself contained no false representation ; that merely collateral representations, although false, will not bar the owner of a trademark from relief either at law or in equity ; and that the single justice had the right to make a final finding that the plaintiff had not been guilty of any such false or fraudulent representations in regard to the shoes sold by him under his trademark as to make it inequitable to give him the full relief prayed for.

In a suit in equity to restrain the defendants from using a trademark of the plaintiff and to recover profits alleged to have been realized from its wrongful use, the single justice who heard the case found that the plaintiff had a valid trademark and was entitled to relief against the defendants for its infringement. He made an interlocutory decree enjoining the defendants from continuing their unlawful use of the plaintiff's trademark, and sent the case to a master to take an account and to determine the damages and the profits, if any, to which the plaintiff was entitled, but reserving consideration of the plaintiff's right to claim profits as such until the filing of the master's report. At the hearings before the master some portions of the testimony were more favorable to certain contentions which the defendants made before this court as to the defendants' liability than the testimony which was heard by the single justice. The plaintiff, before the master, objected to this testimony as incompetent if it was intended " to attack any of the findings either of fact or law " of the single justice, saying, " All facts in regard to the trademark are concluded by the findings of the court." To this the defendants' counsel answered, " I am not raising any such question as that." Later the defendants' counsel made a motion for a modification of the findings and of the interlocutory decree made by the single justice, so as to make them accord with the facts found by the master. The justice denied the motion, and the defendants appealed. *Held*, that the motion was

addressed to the judicial discretion of the justice, and that, although the exercise of such discretion might be reviewed upon appeal, it ought not to be disturbed unless it was plainly wrong, and, in view of the declaration of the defendants' counsel before the master, that by the evidence offered he did not seek to overthrow the findings which had been made by the justice, this court could not say that the justice's discretion was exercised wrongly.

In a suit in equity to restrain the defendants, manufacturers of shoes, from using a trademark of the plaintiff and to recover profits alleged to have been realized from its wrongful use, it appeared that the plaintiff was a jobber, not a manufacturer, who sold shoes which were manufactured by the defendants and others solely for him and under his direction and control, and had created and established a valuable trademark, that he entered the employ of the defendants under an oral agreement, by which they took over the business which he had carried on, and manufactured and sold shoes stamped with his trademark, he having charge of this part of their business as long as he remained in their employ, that, after a period of about two years, the plaintiff rightfully left the employ of the defendants, and the license of the defendants to use his trademark was terminated, but that the defendants continued to use it after notice from the plaintiff not to do so. The plaintiff, before he entered the employ of the defendants, did business under the name of the Washington Shoe Company and his trademark consisted of a label with the word " Washington " and a portrait of George Washington. It further appeared that, while the plaintiff was employed by the defendants and while under his license they rightly were using his label and the name of the Washington Shoe Company, the plaintiff notified dealers in the trade that the defendants were the manufacturers of these shoes and were doing business under his former style, and through his assistance it became known generally that the Washington shoes were made and sold by the defendants, so that after the plaintiff had left their employ and had forbidden them to use his label further, the shoes sold by the defendants with this label were sold not as the plaintiff's shoes but as goods of their own manufacture. *Held,* that the fact, that a result of the defendants' rightful use of the plaintiff's trademark under the license from him was to make the defendants' customers believe that the trademark belonged to the defendants, without any false representation that they were selling the plaintiff's shoes, did not lessen the injury done to the plaintiff or the wrongful advantage gained by the defendants; that the defendants had no right to use the label or the business name of the plaintiff except during the time that he remained in their employ, that after notice from the plaintiff of the termination of the license their continued use of the label was wrongful and with wrong intent, and that the plaintiff was entitled to charge the defendants with the profits realized by them on the shoes sold by them with the plaintiff's trademark, so far as those profits were the profits of a jobber and not of a manufacturer.

In a suit in equity to restrain the defendant from using a trademark of the plaintiff recorded under R. L. c. 72, § 7, and to recover profits alleged to have been realized from its unlawful use, the plaintiff under § 9 of the same chapter is entitled both to an award of damages, if he proves damages, and to have the defendant required to pay the plaintiff as the owner of the registered label the profits derived from its wrongful use by the defendant, and, if at a hearing before a master the plaintiff chooses to put in no evidence on the issue of damage and elects to claim profits and not damages, a finding by the master that the plaintiff's damages were only the nominal sum of $1 does not prevent an award to the plaintiff for the profits. Especially is this so, where it appears that under a

license from the plaintiff to the defendant, which afterwards was terminated, the defendant used the plaintiff's trademark for a period of about two years and that the sum to be paid for its use was fixed by an oral agreement of the parties at $1,000 a year, this being strong, if not controlling, evidence of damages caused to the plaintiff by the defendant's subsequent wrongful use of the trademark, although the actual profits received by the defendant cannot be measured decisively by the amount of such a license fee.

In a suit in equity by a jobber to restrain the defendants, manufacturers, from using a trademark of the plaintiff and to recover profits alleged to have been realized from its unlawful use, it appeared that the plaintiff, after selling goods under his trademark in his own trade name, entered the employ of the defendants under an oral agreement, by which they took over the business which he had carried on and manufactured and sold goods stamped with his trademark, he having charge of this part of their business as long as he remained in their employ, that after a period of about two years the plaintiff rightfully left the employ of the defendants and the license to use his trademark was terminated, but that the defendants continued to use it after notice from the plaintiff not to do so. The defendants contended that the plaintiff had been guilty of such laches as to deprive him of the right to require an account of profits. It appeared, upon this issue, that the plaintiff delayed bringing his suit for nearly two years, but that the delay was caused in part by negotiations between counsel for the parties, and there was evidence before a master, to whom the case was referred upon the question of accounting for profits, that the delay in bringing the suit was due in part to the plaintiff's desire to collect other money due to him from the defendants. Besides these circumstances, it was a conceded fact, that, immediately upon leaving the employ of the defendants, the plaintiff through his counsel notified them of his claim and warned them that he should hold them legally responsible for any further use of his trademark or of his former business name. *Held*, that the plaintiff had not been guilty of such laches as to deprive him of the right to an account of profits.

In a suit in equity by a jobber to restrain the defendants, manufacturers, from using a trademark of the plaintiff and to recover profits alleged to have been realized from its unlawful use, it appeared that the plaintiff, after selling goods under his trademark in his own trade name, entered the employ of the defendants under an oral agreement, by which they took over the business which he had carried on and manufactured and sold goods stamped with his trademark, he having charge of this part of their business while he remained in their employ, that after a period of about two years he rightfully left the employ of the defendants and the license to use his trademark was terminated, but that the defendants continued to use it after notice from the plaintiff not to do so. It was a conceded fact, that, immediately upon leaving the defendants' employ, the plaintiff through his counsel notified them of his claim and warned them that he should hold them legally responsible for any further use of his trademark or of his former business name. Upon the issue of the defendants' wrongful intent, the defendants took the ground that in continuing the use of the plaintiff's trademark they had acted under the advice of counsel, but it did not appear that they had communicated to their counsel all the facts on which such advice should have been based. The single justice who heard the case found that the defendants had received simply a temporary license from the plaintiff and that on its termination they had no further right, and it appeared that their counsel, when he gave them the advice under which they claimed protection, was wholly ignorant of the existence of this fact. *Held*, that, after the plaintiff's notice and

warning, the defendants' further use of the plaintiff's trademark could not be said to be innocent or free from wrongful intent, and that, so far as it was necessary to show wrongful intent on their part, this was enough; and that, even assuming that the advice of counsel would have protected them in any event, it could not do so when it was given without a disclosure to him of the material facts which must have been known to the defendants.

In an accounting, in a suit in equity against the members of a firm of manufacturers, for profits derived from the unlawful use of a trademark of the plaintiff, a master has a right to treat a cost sheet, prepared by one of the original firm of the defendants, and adopted and acted on by the defendants in the conduct of their business, as evidence of the cost of the goods sold by the defendants under the plaintiff's trademark, and to accept its figures as correct in the absence of explicit evidence to the contrary.

In an accounting, in a suit in equity against the members of a firm of manufacturers, for profits derived from the unlawful use of a trademark of the plaintiff, the fact that the defendants, after receiving notice of the plaintiff's claim, failed to keep accounts which would show accurately the amount of their expenses and of their profits upon the goods sold by them under the plaintiff's trademark properly may be treated by a master as a circumstance bearing against them.

In an accounting in a suit in equity for profits derived by the defendants from the unlawful use of a trademark of the plaintiff, it is right for a master to consider losses from bad debts as neither increasing nor diminishing the amount of profits from sales of goods under the plaintiff's trademark, practically treating the sales by which the bad debts were incurred as if they had not been made at all.

In an accounting, in a suit in equity against a firm of manufacturers, for profits derived by the defendants from the unlawful use of a trademark of the plaintiff, it is right for a master to refuse to allow the defendants to charge against their profits upon the goods sold by them under the plaintiff's trademark any portion of the general expenses of their business not shown to have been caused by their sale of the goods sold wrongfully.

In a suit in equity to restrain the defendants, manufacturers of shoes, from using a trademark of the plaintiff and to recover profits alleged to have been realized from its unlawful use, it appeared that the plaintiff was a jobber, not a manufacturer, who sold shoes which were manufactured by the defendants and others solely for him and under his direction and control, and had created and established a valuable trademark designating the shoes sold by him as a jobber, that thereafter he entered the employ of the defendants under an oral agreement, by which they took over the business which he had carried on and manufactured and sold shoes stamped with his trademark, he having charge of this part of their business as long as he remained in their employ, that after a period of about two years the plaintiff rightfully left the employ of the defendants and the license of the defendants to use his trademark was terminated, but that the defendants continued to use it after notice from the plaintiff not to do so and after a warning from him that he should hold them legally responsible for any further use of his trademark or of his former business name. A master, to whom the case was referred to take an account and to determine the damages and profits, charged the defendants with the total profits realized on the shoes sold by them with the plaintiff's trademark after the termination of the license and the notice and warning from the plaintiff. *Held*, that, as the plaintiff had only the trademark of a jobber, he was entitled to receive only the profits which the defendants had derived from that trademark, and was not entitled to receive the profits which the defendants had derived from manufacturing the shoes, and

that the plaintiff was to be allowed the same proportional part of the sum found by the master that he had obtained of the total profits before he entered the defendants' employ, while he was using the trademark for himself and the shoes were manufactured for him by the defendants. *Held, also,* that the plaintiff was entitled to interest from the date of the filing of the master's original report.

Upon an appeal in a suit in equity from a final decree, which overruled exceptions to a master's report, this court must determine what decree is to be entered, and in doing so may find it necessary to pass upon a question not raised by any of the exceptions to the master's report.

There is no ground for the contention that original jurisdiction of all suits relating to the infringement of trademarks is vested exclusively in the courts of the United States.

SHELDON, J. The plaintiff seeks by this bill to restrain the defendants from using a trademark and to recover from them the profits which it is alleged that they have realized through its wrongful use. The action is brought against the surviving partner of the firm of J. H. Winchell and Company and a corporation of the same name which has succeeded to the former firm's business. But the defendants agree that for the purposes of the case they are to be treated as joint parties, and hereafter they will be spoken of as the defendants without any discrimination.

The case was heard on the merits by a single justice,* who filed a statement of the facts found by him. The evidence taken before him also has been reported. It appeared that before October 1, 1900, the plaintiff was doing business on his own account, under the name of the Washington Shoe Company. He did not himself manufacture any shoes, but bought his goods from manufacturers, largely from the defendants. He had put upon the market shoes stamped with the name " Washington," and a portrait of George Washington, which shoes were manufactured for him and under his direction, by the defendants. Through his efforts, these shoes had become well and favorably known to the trade and the public under the name of the " Washington Shoe," and that had become a valuable trademark. In April, 1899, he caused the word " Washington " and said portrait to be registered in the office of the Secretary of the Commonwealth, as a trademark used by himself under the style of the Washington Shoe Company. St.

---

* Mr. Justice Morton.

1895, c. 462, § 1.  St. 1899, c. 359, § 1.  R. L. c. 72, § 7.  In October, 1900, he entered into the defendants' employ, under an oral agreement, and they took over the business which he had carried on, and have since manufactured and sold shoes stamped with his trademark and known as the Washington shoes, he having charge of this part of their business as long as he remained in their employ.  Subsequently, they caused the trademark to be registered in the patent office at Washington in their name.  But this was done without any authority from the plaintiff, and he did not know of it until shortly before he brought this suit.  He did not assign the trademark to them; he did not abandon his right to it; there was no understanding that it was to become the property of the defendants, and their only right was to use it as his licensees so long as he remained in their employ upon mutually satisfactory terms; and it was so understood by the parties.  He left their employ in February, 1903, on account of a disagreement as to his compensation; and their subsequent use of his trademark or label was illegal and without right.

On these facts, the single justice ruled that the plaintiff was entitled to have the defendants restrained from continuing this unlawful use; and by an interlocutory decree they were so enjoined, and the case was sent to a master * to take an account, and to determine the damages and the profits, if any, to which the plaintiff was entitled, but reserving consideration of the plaintiff's right to claim profits as such until the coming in of the master's report.  The case was heard at length before the master, and he reported that the net profits obtained by the defendants from the sale of shoes bearing the label were $12,563.66, but that the plaintiff's damages were only the nominal sum of $1.  Numerous exceptions to this report were overruled; a motion made by the defendants for a revision of the findings of the justice at the hearing on the merits was denied; and a final decree was entered perpetually enjoining the defendants from using the plaintiff's trademark or label, with certain exceptions not now material, and ordering them to pay to him the total amount of profits and damages found by

* Benjamin N. Johnson, Esquire.

the master.  The case now comes before us upon the defendants' appeal from the interlocutory and final orders and decrees.

1. In the opinion of a majority of the court, the plaintiff, although not himself the manufacturer of the shoes which he sold, could under the circumstances create a valid trademark upon them.  He was a jobber, and not strictly a manufacturer. But the shoes were manufactured by the defendants especially and solely for him and in accordance with his directions.  He was to be himself responsible to purchasers as if he had been the manufacturer.  He dictated the stock to be used and the way in which he wished the shoes to be made, and went to the defendants' factory to see that his ideas were carried out.  He determined the design, the material and the workmanship of the shoes.  In short, as he put it in his testimony, he controlled the manufacture of the shoes upon which his label was to be put.  We see no reason to doubt the validity of his trademark. *Burt* v. *Tucker,* 178 Mass. 493.  *Meriden Britannia Co.* v. *Parker,* 39 Conn. 450.  The use of a trademark does not necessarily and as matter of law import that the articles upon which it is used are manufactured by its user.  It may be enough that they are manufactured for him, that he controls their production, or even that they pass through his hands in the course of trade, and that he gives to them the benefit of his reputation, or of his name and business style.  *Weener* v. *Brayton,* 152 Mass. 101, 102.  *McLean* v. *Fleming,* 96 U. S. 245, 253. *Menendez* v. *Holt,* 128 U. S. 514, 520.  *Godillot* v. *Harris,* 81 N. Y. 263, 266.  *In re Australian Wine Importers,* 41 Ch. D. 278, 280, 281.  *Major Brothers* v. *Franklin,* [1908] 1 K. B. 712.  It was so assumed in *Ullmann* v. *Leuba,* [1908] A. C. 443.  And this was not a personal trademark, but one connected with the business carried on by him under the name of the Washington Shoe Company.  It could be assigned and made to pass with a transfer of that business and that name.  *Burt* v. *Tucker,* 178 Mass. 493.  *Hoxie* v. *Chaney,* 143 Mass. 592.  *Warren* v. *Warren Thread Co.* 134 Mass. 247.  *Macmahan Pharmacal Co.* v. *Denver Chemical Manuf. Co.* 113 Fed. Rep. 468, 469, 474, 475. As the absolute property in it could have been so assigned, a limited interest by way of license, to continue either for a fixed period or while license fees were paid, or while the plaintiff

should continue in the employment of the defendants, could also be created. *Kidd* v. *Johnson*, 100 U. S. 617. *Batcheller* v. *Thomson*, 93 Fed. Rep. 660. *Greacen* v. *Bell*, 115 Fed. Rep. 553. *Martha Washington Creamery Buttered Flour Co.* v. *Martien*, 44 Fed. Rep. 473, and 37 Fed. Rep. 797. *Filkins* v. *Blackman*, 13 Blatchf. 440. Of course the plaintiff's temporary disuse of the trademark during the period of such license would not necessarily operate as an abandonment of his rights. *Burt* v. *Tucker*, 178 Mass. 493, 501.

2. But it is contended that the plaintiff, even before he entered the employ of the defendants, represented to the dealers to whom he made sales in the name and style of the Washington Shoe Company, that that company, which then consisted solely of himself, was the manufacturer of the shoes which he sold with this label. He was known to the trade as a manufacturer and not as a jobber. His letter heads read: " Washington Shoe Co., Manufacturers of Specialties. Men's, Boys' and Youth's Shoes." The defendants contend that this conduct of the plaintiff was the practice of a fraud upon his customers, and that for this reason, although the trademark was itself valid, he should have no relief in equity. And it is true that equity will not lend its aid against the infringers of a trademark which contains a material false representation adapted to deceive purchasers of the article sold with it, or which is made the basis of material false representations in carrying on the business in which it is used. *Connell* v. *Reed*, 128 Mass. 477. *Messer* v. *The Fadettes*, 168 Mass. 140. *Hoxie* v. *Chaney*, 143 Mass. 592, 593. *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218. *Pidding* v. *How*, 8 Sim. 477. *Perry* v. *Truefitt*, 6 Beav. 66. *Flavel* v. *Harrison*, 10 Hare, 467. *Cheavin* v. *Walker*, 5 Ch. D. 850. *Leather Cloth Co.* v. *American Leather Cloth Co.* 4 DeG., J. & S. 137, 139, and 11 H. L. Cas. 523. This is but an application of the common maxim that he who seeks equity must come into court with clean hands. If his case discloses fraud, deception or misrepresentation on his own part, relief will be denied to him. *California Fig Syrup Co.* v. *Putnam*, 69 Fed. Rep. 740, and 66 Fed. Rep. 750. *Krauss* v. *Peebles' Sons Co.* 58 Fed. Rep. 585. *Prince Manuf. Co.* v. *Prince's Metallic Paint Co.* 135 N. Y. 24. *Hobbs* v. *Francais*, 19 How. Pr. 567. *Palmer* v.

*Harris*, 60 Penn. St. 156. *Kenny* v. *Gillet*, 70 Md. 574. *Solis Cigar Co.* v. *Pozo*, 16 Col. 388.

But this defense was not set up in the answer of the defendants, and does not appear to have been taken at the hearing before the single justice. Their position was that they and not the plaintiff had originated and owned the trademark, or that they had become its owners under the agreement by which he entered their employ. The justice found against them on this issue, and the evidence clearly justified his finding. The claim now contended for was not put in issue, and certainly was not tried out before the single justice. On the other evidence taken before him, the fact that the plaintiff's letter heads contained the words which have been quoted did not establish the further fact that he was deceiving his customers by false representations that he was the manufacturer of these shoes. Further evidence taken in connection with the use of this letter head doubtless might have established the fact. But the label itself contained no false representation. Moreover, the justice might have found on the weight of the evidence, and it now must be taken that he did find, that these shoes were manufactured under the general direction of the plaintiff, as already has been pointed out. And by his first arrangement with the defendants he was entitled to sell and apparently did sell the shoes in the same manner, upon the same terms and for the same prices as if he had been himself the manufacturer. *Meriden Britannia Co.* v. *Parker*, 39 Conn. 450. *Dale* v. *Smithson*, 12 Abb. Pr. 237. But merely collateral representations, though false, will not bar the owner of a trademark from relief, either at law or in equity. *Ford* v. *Foster*, L. R. 7 Ch. 611, cited and followed in *Siegert* v. *Findlater*, 7 Ch. D. 801, 811, *Liebig's Extract of Meat Co.* v. *Anderson*, 55 L. T. (N. S.) 206, 208, 209, and *Newman* v. *Pinto*, 57 L. T. (N. S.) 31, 38. See also *William Rogers Manuf. Co.* v. *Simpson*, 54 Conn. 527. The case of *Pratt's Appeal*, 117 Penn. St. 401, though it has been criticised, may yet in our opinion be sustained on the ground that the trademark there considered came under the same rule as in *Hoxie* v. *Chaney*, 143 Mass. 592, and that no material false representations had been made by the plaintiff.

On the whole, so far as this question is concerned, the majority of the court are satisfied that the single justice was war-

ranted in finding that the plaintiff had a valid trademark and was entitled to relief against the defendants for its infringement. Whether upon the evidence taken before the master and the facts found in the master's report, the plaintiff should be debarred by reason of his alleged fraud from holding the defendants to account for profits, and whether the single justice ought to have granted the defendants' motion that the findings which he had made and the interlocutory decree based thereon should be amended, will be considered hereafter.

3. We are of opinion also that relief cannot be refused to the plaintiff by reason of laches on his part; or because the defendants did not by the use of the trademark or otherwise represent that the Washington shoes sold by them after the plaintiff had left their employ were his goods; or on the ground that the trademark was not personal to the plaintiff, but belonged to the business of the Washington Shoe Company, and that the business had been transferred by the plaintiff to the defendants. It is unnecessary to consider these questions here in detail; for the defendants' reliance upon these points is mainly to sustain their contention that they should not be held liable for the profits realized by them from their use of the trademark, and they agree that their defense upon this question is stronger than upon the question of enjoining them from further violation of the plaintiff's rights by using the trademark itself. See *Regis* v. *Jaynes & Co.* 191 Mass. 245, 247, *et seq.*, and cases there cited; *Fairbank Co.* v. *Luckel, King & Cake Soap Co.* 106 Fed. Rep. 498; *Beard* v. *Turner*, 13 L. T. (N. S.) 746.

4. For the reasons already stated, the plaintiff cannot be prevented from holding the defendants for their profits on the ground that he deceived the trade by falsely representing that the Washington Shoe Company was the manufacturer of his shoes. It is true that the interlocutory decree entered by the single justice left the question of the defendants' liability for profits entirely open; and it is also true that some portions of the testimony before the master as to whether the plaintiff had been guilty of any material deception were more favorable to the defendants' present contention than that which was heard by the single justice. But the plaintiff's right to general relief had been settled at the hearing upon the merits; it had been

adjudicated by the interlocutory decree; and it was not open to investigation before the master. *Rosenberg* v. *Heffernan*, 197 Mass. 151, 156. *Stewart* v. *Joyce*, 201 Mass. 301. This was the view taken by the parties themselves. This sufficiently appears from what took place when the defendants' counsel offered in evidence to the master the plaintiff's letter head already mentioned. The plaintiff's counsel thereupon said to the master, "If it is intended by this line of inquiry to attack any of the findings either of fact or law of his Honor Judge Morton, it is incompetent. All facts in regard to the trademark are concluded by the findings of the court." To this the defendants' counsel answered: "I am not raising any such question as that." If a different position had been taken, it may be that the plaintiff would have gone further into this matter, and that very much other evidence would be now before us. We cannot regard the facts found by the single justice and made the basis of his interlocutory decree as changed or modified by the evidence before the master, or by any findings made by him. And the single justice, upon his own previous findings and the master's report, had the right to make his final finding that the plaintiff had not been guilty of any such false or fraudulent representation in regard to the shoes sold by him under this trademark as to render it inequitable to give him the full relief prayed for.

5. It is convenient to consider here the defendants' motion for the modification of the findings made and of the interlocutory decree entered by the single justice, so as to make them accord with the facts found by the master. This motion was of course addressed to his judicial discretion; *Hirsh* v. *Beard*, 200 Mass. 569; and although the exercise of that discretion may be reviewed upon appeal, yet it ought not to be disturbed unless it was plainly wrong. In view of the avowal of the defendants' counsel which we have already mentioned, and which both the master and the plaintiff's counsel were warranted in treating as a declaration that it was not sought to overthrow the findings which had been made by the justice, we cannot say that the justice's discretion was wrongly exercised; and his order denying this motion of the defendants must be affirmed. It is manifest that this issue was not tried out or attempted by the defendants to

be tried out before the master any more than it had been before the single justice. They were simply seeking to go into certain specific and isolated facts which they contended, rightly or wrongly, bore upon the plaintiff's right to an accounting for profits. Too much weight ought not to be given to isolated expressions of a witness. Rugg, J., in *Picquett* v. *Wellington-Wild Coal Co.* 200 Mass. 470, 473. This is especially true where both question and answer are directed to a different issue from that to which they are afterwards sought to be applied. It would be unjust to the plaintiff to treat him now as barred by the isolated facts thus brought out and to say that he was prevented by them from contesting an issue which, if it had been seasonably raised and decided against him, would have been fatal to his whole contention. *McNeal* v. *Leonard*, 3 Allen, 268. Nor did justice require that the whole question of the defendant's liability should be reopened by reason of these isolated facts avowedly brought out for a different purpose, upon a different ground, and without any intention of raising the issue upon which it since has been contended that they were conclusive.

6. The plaintiff, while he was employed by the defendants, and while under his license they were rightly using this label and the name of the Washington Shoe Company, did, as the master has found, notify dealers in the trade that the defendants were the manufacturers of these shoes and were doing business under his former style. By his assistance and largely through his efforts it became generally known that the Washington shoes so called were made and marketed by the defendants. Accordingly, after the plaintiff had left their employ and had forbidden them to use further his label, it still remained true that the shoes sold by them with this label were not sold as the plaintiff's shoes, but as goods of their own manufacture. But it was no less a wrong to the plaintiff to use his trademark against his prohibition than if they had not hitherto used it with his consent. That one result of their rightful user under his license had been to make their customers believe that the trademark belonged to the defendants, and that their continued sales were not made under a false representation that the goods they were selling were the plaintiff's shoes, did not, under the circumstances of this case, at all lessen either the injury done

to the plaintiff or the wrongful advantage gained by the defendants. Their contention that it is inequitable by reason of this circumstance to hold them accountable for their profits cannot be sustained. The language of the courts in *Weener* v. *Brayton*, 152 Mass. 101, 102, 103, *Canal Co.* v. *Clark*, 13 Wall. 311, 322, and *Baker* v. *Baker*, 115 Fed. Rep. 297, relied on by the defendants, is perfectly correct as the statement of a general rule, but is not applicable to this case, which, as pointed out by the single justice in his memorandum of decision, is not a case of illegal competition, but of wrongful appropriation of a trademark. The cases of *Saxlehner* v. *Apollinaris Co.* [1897] 1 Ch. 893, *Heller & Merz Co.* v. *Shaver*, 102 Fed. Rep. 882, and *George G. Fox Co.* v. *Glynn*, 191 Mass. 344, 352, although not exactly in point, have more resemblance to the case at bar.

7. Nor can it be said that the defendants are not liable for profits on the ground that this trademark was not a personal one, but belonged to the business of the Washington Shoe Company, and that this business had been transferred by the plaintiff to the defendants. By the findings of the justice it does not appear that they had a right to use that name except during the time covered by the plaintiff's license, that is, while he remained in their employ. There was no express grant of this right made to them by him; and the limitation of their right to use the label must be applicable alike to their right to use the business name. This results from the very fact that the trademark was not strictly personal, but to be used in connection with the business name.

8. The fact that there was no evidence before the master that the plaintiff had sustained damage through the loss of his trademark or because of its use by the defendants, does not necessarily make it inequitable to hold them for their profits. It is expressly provided by our statute, R. L. c. 72, § 9, that such profits shall be allowed. The right to refuse to allow them in cases not coming under the statute, like *Lawrence* v. *Hull*, 169 Mass. 250, is not material here. Nor is the general doctrine stated in *Regis* v. *Jaynes & Co.* 191 Mass. 245, 247, 253, in which it was not found necessary to consider the statute, now of consequence. The master's finding as to damages rests upon the plaintiff's failure to offer evidence as to this subject, rather

than upon an actual finding upon evidence introduced, and would seem to indicate an election on the plaintiff's part to claim profits and not damages. Moreover, the very fact that the parties, by their agreement made when the plaintiff entered into the defendants' employ, had fixed upon $1,000 as the sum to be paid annually for the use of the plaintiff's trademark and business name was evidence, — according to some of the decisions strong or even controlling evidence, — of the damages caused to the plaintiff by its subsequent wrongful use. *Coupe* v. *Royer*, 155 U. S. 565. *Clark* v. *Wooster*, 119 U. S. 322. *Burdell* v. *Denig*, 92 U. S. 716. *Philp* v. *Nock*, 17 Wall. 460. *Seymour* v. *McCormick*, 16 How. 480. *Bates* v. *St. Johnsbury & Lake Champlain Railroad*, 32 Fed. Rep. 628. *Cary* v. *Lovell Manuf. Co.* 37 Fed. Rep. 654, 656. *Cassidy* v. *Hunt*, 75 Fed. Rep. 1012, 1015. But for the fact that the plaintiff apparently had elected not to claim damages as such, it might become a serious question whether the master's finding that there was no evidence of damages was not manifestly wrong. But it appears, both upon principle and from the cases already cited, that the defendants' actual profits cannot be decisively measured by the amount of this license fee.

9. The plaintiff has not been guilty of such laches as to deprive him of the right to require an account of profits. He delayed bringing this suit for nearly two years; and there is authority for the contention that if nothing further had appeared this unexplained delay might have produced the result claimed by the defendants. *Beard* v. *Turner*, 13 L. T. (N. S.) 746. *Menendez* v. *Holt*, 128 U. S. 514. *McLean* v. *Fleming*, 96 U. S. 245, 253, 258. *Fairbank Co.* v. *Luckel, King & Cake Soap Co.* 116 Fed. Rep. 332. *Low* v. *Fels*, 35 Fed. Rep. 361. *Regis* v. *Jaynes & Co.* 191 Mass. 245, 247. But there were further facts. It was found by the single justice that the delay was in part caused by negotiations between counsel for the parties. There was evidence before the master that it was due in part to the plaintiff's desire to collect other money due to him from the defendants. Beside these circumstances, which it might have been found accounted for less than six months of the delay, there is the conceded fact that immediately upon leaving the defendants' employ the plaintiff, through his coun-

sel, expressly notified them of his claim and warned them that he would hold them legally responsible for any further use of his trademark or of his former business name. This made it manifest that he did not acquiesce in such further use by them. In this respect the case differs from most of those cited above. There was here a real objection instead of merely an apprehended one, as in *Daly* v. *Foss*, 199 Mass. 104. Nor is the defence of laches set up in the answer.

10. After the plaintiff's notice and warning, the defendants' further use of this label cannot be said to have been innocent or free from wrongful intent. *Orr Ewing & Co.* v. *Johnston Co.* 13 Ch. D. 434. *Brennan* v. *Dowagiac Manuf. Co.* 162 Fed. Rep. 472. *Regis* v. *Jaynes & Co.* 191 Mass. 245, 248. So far as it was necessary to show wrongful or fraudulent conduct on their part, (see *Singer Machine Manuf. Co.* v. *Wilson*, 3 App. Cas. 376,) this was enough. They cannot shield themselves under the plea that they acted upon the advice of counsel; for, even if we assume without deciding that this would in any event have protected them, it does not appear that they communicated to their counsel all the facts upon which that advice should have been based. The finding of the single justice that they had received simply a temporary license from the plaintiff and that they had no further right, did not create this fact; it simply declared the existence of a fact which they must be taken to have known, and which undoubtedly they did know. But there is no pretense that they communicated this highly material fact to their counsel; and his letter of February 9, 1903, to the plaintiff's counsel makes it very plain that he was wholly ignorant of its existence.

11. We cannot say, in spite of the very able and elaborate argument of the defendants' counsel, that the master's finding of the amount of the defendants' profits was wrong. He had a right to treat the cost sheet prepared by Clark, one of the defendants' original firm, and adopted and acted on by the defendants in the conduct of their business, as evidence of the cost of their shoes, and to accept its figures as correct in the absence of explicit evidence to the contrary. In other words he had the right to find, as he did find, that the cost sheet at least furnished the best basis for ascertaining such cost, especially in view of

the fact that Clark was fully acquainted with the business and with the market price and cost of merchandise and all other elements of labor and expense, and that throughout the preparation of these estimates it was intended to leave a leeway or margin of profit in favor of the manufacturers. He had a right to treat the failure of the defendants, after they had received notice of the plaintiff's claim, to keep accounts which would show accurately the amount of their expenses and of their profits upon Washington shoes as a circumstance bearing against them. He did not go further than the rules laid down in *Rubber Co.* v. *Goodyear*, 9 Wall. 788, *Brennan* v. *Dowagiac Manuf. Co.* 162 Fed. Rep. 472, *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62, 108, and *Docker* v. *Somes*, 2 Myl. & K. 655, 674. As to losses from bad debts, he adopted the doctrine of *Edelsten* v. *Edelsten*, 10 L. T. (N. S.) 780, neither increasing the amount of profits by reason of such sales nor diminishing that amount on account of the loss caused thereby, but practically treating those sales as if they had not been made at all. In our opinion, this was right. As to the allowance of general expenses of the business, he followed the rule laid down in *Regis* v. *Jaynes & Co.* 191 Mass. 245, 251, 252. Here, as there, to allow the defendants to charge against their profits upon these goods any portion of such expenses, not shown to have been increased by their dealing in these goods, would be to permit them, by diminishing the expenses of conducting the rest of their business, to derive a direct advantage from their own wrongdoing. But since, as we shall hereafter see, the defendants are to be allowed their manufacturing profits, this question becomes less important. We see no advantage in going through the calculations made in argument and the figures laid before us in detail. We do not find that the master adopted any erroneous rule of law in dealing with them, or that any of his findings upon them were manifestly wrong.

12. The master has charged the defendants with the total profits realized on the shoes sold by them with the plaintiff's trademark. This is the general rule. *Reading Stove Works* v. *S. M. Howes Co.* 201 Mass. 437. *Regis* v. *Jaynes & Co.* 191 Mass. 245, 249, 250, and cases there cited. But, as has been said, the circumstances of this case are peculiar. This trademark was not a manufacturer's, but a jobber's trademark. The

plaintiff never could have realized, he never expected to realize from it the profits of a manufacturer, but only those of a jobber. Its validity has been sustained simply as the trademark of a jobber. It was to become operative only upon shoes which had already yielded a manufacturer's profit. It was capable of yielding only the profits of a jobber. We are not called upon to determine what would be the measure of liability of a manufacturer who should as a mere wrongdoer appropriate a jobber's trademark. These parties had from the beginning dealt with each other as manufacturer and jobber of the Washington shoe. The plaintiff did not himself manufacture his shoes while he alone held the trademark, but bought them from the defendants. They sold the shoes to him, apparently for a somewhat less price than they obtained from their other customers for shoes of a like quality not bearing his label, but still for a price which doubtless yielded them a manufacturer's profit. He then sold the shoes under his trademark for a somewhat higher price, made higher by the addition of a sum which constituted the profit attributable to his trademark. That is, these parties had, in the beginning, by the course of dealing which they adopted, divided the total profits to be obtained from these shoes into two portions, a manufacturer's profit for the defendants and a trademark profit for the plaintiff. In this respect the case differs from any of those which have been cited at the bar, nor have we found any other case of the same character. Under these circumstances the plaintiff entered into the defendants' employ, and for certain payments made by them allowed them by his license to take to themselves both the manufacturing and the trademark profits. When he left them, they had a right still to manufacture the shoes, but not to put his label upon them; and when they continued wrongfully to do the latter in spite of his prohibition, their gain and his loss were the same, i.e., the amount of the trademark profits. They ought then to have paid over to him at once the amount of the trademark profits undiminished, but they had a right to retain for themselves the manufacturing profits. In the opinion of a majority of the court, they now should account to him for the trademark profits which were originally and lawfully his; they ought not to be required to account for the manufacturing prof-

its, to which he never had any claim. To state the case in symbols, the total amount received by the defendants from their wrongful sales may be represented by the expression $a + b + c$, in which $a$ represents the total cost of the shoes, including all items which properly can be included therein, $b$ is the manufacturing profit, and $c$ is the trademark profit. The master has found the total amount of $b$ and $c$ to be $12,565.66, and the finding must stand. But of this total, the part represented by $b$, the manufacturing profit, should be left to the defendants, and the part represented by $c$, the trademark profit, should be given to the plaintiff. *Cartier* v. *Carlile*, 31 Beav. 292, 298, 299. *Atlantic Milling Co.* v. *Rowland*, 27 Fed. Rep. 24. This is the fundamental principle of *Ludington Novelty Co.* v. *Leonard*, 127 Fed. Rep. 155. And under the special circumstances of this case the amount to be received by the plaintiff should be determined according to what was done by the parties between December, 1898, when the plaintiff began to use his trademark, and October, 1900, when he entered into the employ of the defendants. That is, the plaintiff is to be allowed the same proportional part of the sum found by the master that he obtained of the total profits above the cost of manufacture while he used this trademark for himself. He should have also interest from the date of the filing of the master's original report. If the parties cannot agree upon this amount, the case must be recommitted to the master to determine it. This question has not been raised upon any of the exceptions to the master's report; but upon the defendants' appeal we must determine what decree is to be entered, and this necessarily requires us to fix the amount of profits for which upon the facts found and reported the defendants are to be held accountable. *French* v. *Peters*, 177 Mass. 568. *Huntress* v. *Hanley*, 195 Mass. 236, 239.

13. It is not necessary to consider in detail the other exceptions taken by the defendants. They cannot be sustained.

14. The defendants also contend that original jurisdiction of the subject matter of this suit is vested in the courts of the United States, and that this court has not jurisdiction to entertain the case. In our opinion, that contention is without merit. *Trade-Mark Cases*, 100 U. S. 82. *In re Keasbey & Mattison Co.*

160 U. S. 221, 230. *Elgin National Watch Co.* v. *Illinois Watch Case Co.* 179 U. S. 665, affirming *Illinois Watch Case Co.* v. *Elgin National Watch Co.* 94 Fed. Rep. 667. *Traiser* v. *J. W. Doty Cigar Co.* 198 Mass. 327. *Regis* v. *Jaynes & Co.* 191 Mass. 245, 253. *Smail* v. *Sanders,* 118 Ind. 105.

The final decree must be modified in accordance with the twelfth division of this opinion. In all other respects the orders and decrees appealed from must be affirmed.

*So ordered.*

The case was argued at the bar in November, 1908, before *Knowlton,* C. J., *Morton, Hammond, Sheldon,* & *Rugg,* JJ., and afterwards was submitted on briefs to all the justices.

*B. B. Jones,* for the defendants.

*A. P. Browne,* (*G. W. Mathews* with him,) for the plaintiff.