### WARD BAKING CO. v. POTTER–WRIGHTINGTON, Inc.

(Circuit Court of Appeals, First Circuit. April 8, 1924.)

#### No. 1641.

1. **Trade-marks and trade-names and unfair competition ⊚⇒45—Dealer in flour held to have acquired valid trade-mark in words "Old Grist Mill" and pictorial representation used on bread wrappers.**

    Dealer in flour, adopting the words "Old Grist Mill," with a pictorial representation of such a mill, and placing these words and pictures on bread wrappers, inducing customers to demand a bread made of "Old Grist Mill Flour," and registering the ·words and picture as a trademark, *held* to acquire a valid trade-mark in such name and such pictorial representation.

2. **Trade-marks and trade-names and unfair competition ⊚⇒23—Nature of property in "trade-mark."**

    There is no such thing as property in a trade-mark, except as a right pertaining to an established business or trade in connection with which the mark is employed; the right to such designation, arising out of its use and its function, being to designate goods as the product of a particular dealer, and to protect his good will against the sale of another's product as his.

    [Ed. Note.—For other definitions, see Words and · Phrases, First and Second Series, Trade-Mark.]

3. **Trade-marks and trade-names and unfair competition ⊚⇒60—Trade-mark of flour company held infringed by baking company.**

    A baking company, selling a wheat bread called "Homespun" in a wrapper with a picture of an old grist mill, and in its advertisements· using the word "Look for the Old Grist Mill," *held* to have infringed on trade-mark of flour company, which had acquired property right in the words "Old Grist Mill" and a pictorial representation of such a mill.

4. **Trade-marks and trade-names and unfair competition ⊚⇒65—Test as to infringement of trade-marks.**

    In determining whether there is infringement of trade-mark, the test must be whether the similarity of brands would mislead the ordinary observer, since the usual purchaser does not analyze.

5. **Trade-marks and trade-names and unfair competition ⊚⇒84—Plaintiff's possible infringement of trade-mark of another does not entitle defendant to appropriate trade-name.**

    The fact that plaintiff's trade-mark and trade-name may infringe the prior trade-mark of another does not defeat plaintiff's right to have de-

fendant enjoined from marketing its goods under a wrapper containing plaintiff's trademark and trade-name; the element of unfair competition remaining.

6. Trade-marks and trade-names and unfair competition ☞68—Flour dealer and baker held in competition with each other.

A manufacturer and a dealer in whole wheat flour, which had sought to increase the sales of its product by extensively advertising bread made from its flour, and had furnished bakers using its flour with wrappers bearing its trade-mark, is in competition with a baker selling similar bread in a wrapper which infringes the flour dealer's trade-mark.

7. Equity ☞65(2)—Plaintiff, in suit for infringement of trade-mark, held not to have come into court with unclean hands.

In a suit for infringement of trade-mark and unfair competition, proof that plaintiff was selling flour as whole wheat flour though part of the hull of the wheat had been removed therefrom, but that such flour was within the fair and generally accepted use of the term "whole wheat flour," held not to show plaintiff came into court with unclean hands.

8. Trade-marks and trade-names and unfair competition ☞84—Use of plaintiff's trade-name by others after adoption by plaintiff does not excuse use by defendant.

That others in different parts of the United States have used plaintiff's trade-mark amounts only to a statement that other persons have also imitated and infringed plaintiff's trade-mark, and does not excuse defendant's use thereof.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by Potter-Wrightington, Inc., against the Ward Baking Company, to restrain unfair competition and trade-mark infringement. From a decree for plaintiff (288 Fed. 597), defendant appeals. Affirmed.

W. Brown Morton, of New York City (Wm. Quinby, of Boston, Mass., on the brief), for appellant.

Edmund A. Whitman, of Boston, Mass., for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

HALE, District Judge. This case is now before us on appeal from a decree of the District Court that the defendant appellant has infringed the rights of the plaintiff appellee in and to the words "Old Grist Mill" and a pictorial representation of such old mill. The decree enjoins the defendant appellant from using such words and such pictorial representation in connection with the sale of bread, or other food products, and the public advertisement thereof. This is a trade-mark case; it involves some of the usual issues in such cases. In its assignments of error the defendant contends that the court erred:

First, in holding that the plaintiff had any rights in and to the words "Old Grist Mill" and a pictorial representation of such mill;

Second, in holding that the defendant had infringed the rights of the plaintiff;

Third, in enjoining the defendant from using the words "Old Grist Mill," or a pictorial representation thereof, in connection with the sale of bread and other food products, and the public advertisement thereof.

The defendant sets up several distinct defenses, which we will state and consider.

The first assignment of error raises the fundamental question of the validity of the plaintiff's trade-mark.

[1] 1. The proofs show that about 1893 the plaintiff corporation was a commission merchant, a dealer in flour, and a manufacturer of rolled wheat, rye flakes, and other wheat products; that about 1893 it put upon the market an entire wheat flour and adopted as a mark the words "Old Grist Mill," with a pictorial representation of such a mill; that, thereafter it placed these words and this picture upon its bread wrappers; that it continuously made use of the term "Old Grist Mill"; that it induced customers to demand bread made of Old Grist Mill flour from their bakers and grocers; that it gave public representations of the merit of the bread made from Old Grist Mill flour, selling packages under that name, and directing its advertising to bringing Old Grist Mill products before the public; that it registered the words "Old Grist Mill" and the picture, as a trade-mark, in the United States Pat-, ent Office, and in the proper offices in Massachusetts and California; that it spent large sums of money, and created a large volume of business in Old Grist Mill products; that it built up in the public mind a good will in Old Grist Mill flour; that it so associated its mark with its products that the mark came to identify the origin and ownership of the plaintiff's goods. We think it acquired a valid trade-mark in such name and such pictorial representation.

[2] Property in a trade-mark is not acquired like property in a patent or invention. There is little analogy between a patent and a trade-mark. The courts have pointed out that there is no such thing as property in a trade-mark, except as a right pertaining to an established business or trade in connection with which the mark is employed; that the right to such a designation arises out of its use; that its function is to designate goods as the product of a particular dealer and to protect his good will against the sale of another's product as his; that it becomes the subject of property by being used in connection with an existing business, and that by such use it shows the origin of the goods sold, not arbitrarily, but by association of the public mind with the mark. Hanover Milling Company v. Metcalf, 240 U. S. 403, 412, 414, 36 Sup. Ct. 357, 60 L. Ed. 713; United Drug Company v. Rectanus Co., 248 U. S. 90, 96, 39 Sup. Ct. 48, 63 L. Ed. 434.

[3] 2. The second and third assignments of errors raise the question whether the defendant has infringed the rights of the plaintiff in its trade-mark, and whether it should be enjoined.

The defendant is a baking company. The proofs show that early in 1922 it manufactured and sold a whole wheat bread called "Homespun." It offered this bread to the public in a wrapper with the words "Ward's Homespun Bread," and with a picture of an old grist mill having a water wheel on the gable end at the side of the building, and on its advertisements it had the words, "Look for the Old Grist Mill."

In the plaintiff's picture the mill is at the front end, and there is a flume leading the water to it. Both pictures represent an old grist

mill. Some time afterwards the defendant put out an advertising card with the picture of a mill, with the words:

"Back of the loaf is the snowy flour,
And back of the flour the mill,
And back of the mill is the wheat and the shower,
And the sun and the Father's will."

In advertising since January 1, 1922, on pictures showing the old grist mill, the defendant has adventured into more verse, as follows:

"Back of the loaf is the Whole Wheat Flour,
Which is ground at the old grist·mill,
And back of the mill is the wheat and the shower,
And the Sun and the Father's will."

About 1912 the defendant acquired a bakery in Newark, N. J., which appears to have been using certain quantities of the plaintiff's Old Grist Mill flour, and selling its bread in wrappers received from the plaintiff. After the purchase, this branch of the defendant appellant company, as the proofs show, continued to use plaintiff's Old Grist Mill flour, and received from the plaintiff a large quantity of its Old Grist Mill wrappers.

[4] The emblem adopted by the defendant appellant is not identical with that of the plaintiff appellee. In analyzing the two wrappers, differences may be pointed out which, if known and recognized, might avoid mistaking one for the other. But the usual purchaser does not analyze; he merely looks, perhaps hastily; and the test must be whether the similarity of brands would mislead the "ordinary observer." Columbia Mill Company v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Cantrell & Cochrane v. Hygeia Distilled Water Co., Inc. (C. C. A.) 283 Fed. 400; Hanover Milling Co. v. Metcalf, 240 U. S. 403, 424, 36 Sup. Ct. 357, 60 L. Ed. 713. We think it would so mislead. The proofs persuade us that, when the defendant appellant adopted its design, it had knowledge of the plaintiff's trade-mark; that it has done a large business, and made large sales of bread with such emblems on its wrappers as those which we have described; that it has advertised "Look for the Old Grist Mill"; that, on being notified ·in February, 1922, of a claim of infringement, it refused to discontinue the use of the words, "Old Grist Mill," and of the picture and advertisement, and has since repeatedly used such design.

Upon a careful examination of the wrappers and the proofs, we are of the opinion that the use by the defendant of the words "Old Grist Mill" and of its picture and advertisement, is deceptively similar to the use by the plaintiff, and is an infringement of the plaintiff's rights in its trade-mark. We agree with Judge Anderson, in the District Court, in holding that the wrongful conduct of the defendant was deliberate and persistent; that it was a case of undertaking to appropriate the property of the plaintiff, and to mislead the public into buying its own products when the products of the plaintiff were sought.

[5] 3. The defendant sets up the defense that the plaintiff was anticipated in the use of its trade-mark by one Thornton. It appears that Frank L. Thornton, of Providence, R. I., about 1892, was carrying on a small business as a dealer in corn meal and other cereals; that

he adopted a similar emblem (but not the words "Old Grist Mill"), and that he had it registered as a trade-mark and used it in his business in and near Providence. A bill was brought against this plaintiff to restrain an infringement of Thornton's rights. It was demurred to, and was finally dismissed from the docket. There is nothing in the record tending to show that the plaintiff pirated upon any rights of Thornton. There is no question of invention in a trade-mark case. It may be that it will be found that Thornton, in a limited territory, used a design somewhat similar to that of the plaintiff. Upon this point we think the District Court has properly held that, even if, for some purposes and in some territory, the Thornton Company may have a right in the trade-mark superior to that of the plaintiff, the defendant is not thereby exonerated from responsibility for an attempt to appropriate to itself a good will created by the plaintiff during a long course of business. Whatever Thornton has done or has not done, the ultimate offense is that the defendant has passed off its goods as those of the plaintiff, and has thereby invaded the rights of the plaintiff, rights not acquired by invention or discovery or registration, but by adoption and use. United Drug Co. v. Rectanus Co., 248 U. S. 90, 103, 39 Sup. Ct. 48, 63 L. Ed. 434, supra; Tetlow v. Tappan (C. C.) 85 Fed. 774; Merriam Co. v. Saalfield, 198 Fed. 369, 372, 117 C. C. A. 245.

[6] 4. The defendant says that the plaintiff is a baker; the defendant is a miller; that the two are not in competition; and the plaintiff has suffered no injury. In Aunt Jemima Mills Co. v. Rigney & Co., 247 Fed. 407, 410, 159 C. C. A. 461, 464 (L. R. A. 1918C, 1839) a trade-mark on self-rising flour was held infringed by the use of the same trade-mark on pancake syrup. In speaking for the Court of Appeals for the Second Circuit, Judge Ward said:

"Syrup and flour are both food products, and food products commonly used together. Obviously the public, or a large part of it, seeing this trade-mark on a syrup, would conclude that it was made by the complainant. Perhaps they might not do so, if it were used for flatirons. In this way the complainant's reputation is put in the hands of the defendants. It will enable them to get the benefit of the complainant's reputation and advertisement. These we think are property rights which should be protected in equity."

In Carroll v. Ertheiler (C. C.) 1 Fed. 688, the plaintiff manufactured tobacco; the defendant was a cigarette maker. The plaintiff adopted the word "Lone Jack" and the defendant was enjoined from selling "Lone Jack" cigarettes, the court saying that it did not believe the public or the trade would draw such a distinction as the defendant contended for. This last case was cited by Judge Coxe in the Circuit Court in 1909, in American Tobacco Company v. Polacsek, 170 Fed. 117. In ordering an injunction the court said:

"Can the trade-mark of a manufacturer of smoking and chewing tobacco be appropriated by the manufacturer of cigarettes? I incline to the opinion that it cannot be. A trade-mark is a guaranty that the goods to which it is attached are made by its owner. If the owner has a high character for honesty, good workmanship, and fair dealings his mark stands for all of these qualities. Those who have been accustomed to his goods see his mark and buy, knowing that they will not be defrauded. Whether a manufacturer confines himself to smoking tobacco, chewing tobacco or cigarettes, he is still in the tobacco business, just as one is in the clothing business whether

he makes coats, waistcoats, or trousers, and just as one is in the whisky business whether he makes rye or bourbon. A consumer who believes in McAlpin's tobacco, seeing 'Virgin Leaf' cigarettes on the market, will naturally think that they are the product of the McAlpin factory, precisely as if 'D. H. McAlpin & Co.' had been printed on the package."

See Collins Co. v. Ames Co. (C. C.) 18 Fed. 561; British American Tobacco Co. v. British American Stores Co., 211 Fed. 933, 128 C. C. A. 431, Ann. Cas. 1915B, 363.

The defendant seeks a narrower interpretation of the law, and cites Borden Ice Cream Co. v. Borden's Condensed Milk Company, 201 Fed. 510, 121 C. C. A. 200, where the Circuit Court of Appeals for the Seventh Circuit, in an "unfair competition" case, held that in the absence of direct competition the doctrine cannot be invoked.

We think the case at bar must be put upon a broader ground. We think the test should be whether the public is likely to be deceived. Both the plaintiff and the defendant are seeking to induce people to use a whole wheat flour in bread; the representations of the defendant clearly tend to induce the user of flour to believe that he is getting the plaintiff's flour in his bread, when, in fact, he is getting the defendant's flour. We cannot sustain this defense.

[7] 5. The defendant says that the plaintiff comes into court with unclean hands; that it has put out a cereal product, described as an "entire wheat" product, milled after the plain fashion of the Old Grist Mill; whereas, it has removed from this product that part of the wheat which contains the medicinal properties; and yet, notwithstanding that removal, it makes medicinal claims for the product.

The defendant relies upon the Syrup of Figs case, Worden v. California Fig Syrup Company, 187 U. S. 516, 23 Sup. Ct. 161, 47 L. Ed. 282, in which case the owners of a trade-mark were refused relief for the reason that their product was made up, not of syrup of figs, but principally of senna. The court held that misrepresentation of the nature or quality of a commodity offered for human consumption constitutes such unclean hands as will prevent the owner of the trade-mark from relief against an infringer; and the defendant says that the plaintiff, in the case at bar, advertised whole wheat flour, when admittedly the bran part of the wheat had been sifted out, and that therefore the plaintiff's claim, made long ago on its bread wrappers, of certain healthful effect resulting from eating the bread, was unwarranted and deceptive.

We find nothing in the record to show that the defendant was inaccurate in advertising its product as "entire wheat flour." The lexicographers say that "flour" is the finer particles of grain, after the "bran," or the "outer husk" or "broken coat of the seed" of grain, has been sifted out; that flour is the "flower (the best) of meal"; that "for graham flour the entire wheat kernel is used, and for entire wheat flour all but the coarser bran." It seems clear that "flour" does not include any part of the skin or husk. We think that "entire wheat flour" may be made from the whole seed of the wheat, but without the skin, or rough husk, of the seed. It appears that the plaintiff's flour was made from the seed of the wheat, including all but the coarsest part of

the husk or bran; it differed from ordinary wheat flour, from which the entire husk and "middlings" had been removed. We think the elimination of the coarser bran does not prevent the plaintiff's product from being "whole wheat flour" within the generally accepted use of the term; that the plaintiff was truthful in advertising its product as "whole wheat flour" or "entire wheat flour," in the common use of the English language. Such representations as are shown by the proofs will not bar the plaintiff from relief. Nelson v. Winchell & Co., 203 Mass. 75, 84, 89 N. E. 180, 23 L. R. A. (N. S.) 1150; Coca Cola Co. v. Koke Company, 254 U. S. 143, 145, 41 Sup. Ct. 113, 65 L. Ed. 189. See, also, American Thermos Bottle Company v. Grant Company, 279 Fed. 151, 156, 158, a District Court case citing many authorities, affirmed 282 Fed. 426.

We cannot sustain the charge made by the defendant that the plaintiff has deceived the public, and comes into court with unclean hands.

[8] 6. The defendant has introduced evidence tending to show that others, in different parts of the United States, have used the picture of a grist mill.

The courts have held that this amounts to a statement that other persons have also imitated and infringed the plaintiff's trade-mark. Mr. Justice Story said that this "rather aggravates than excuses the misconduct [of the defendant], unless done with the consent, or acquiescence of the plaintiffs." Taylor v. Carpenter (C. C.) 3 Story, 458, Fed. Cas. No. 13,784; Actiengesellschaft, etc., v. Amberg, 109 Fed. 151, 48 C. C. A. 264; Saxlehner v. Eisner, etc., Co., 179 U. S. 19, 37, 39, 21 Sup. Ct. 7, 45 L. Ed. 60.

We are of the opinion that the District Court was right in holding, upon the proofs, that the plaintiff has a valid trade-mark, and in making a decree that the defendant has infringed the rights of the plaintiff in and to that trade-mark, and in making its further decree that the defendant be enjoined from such infringement.

The decree of the District Court is affirmed. The plaintiff appellee recovers costs in this court.